1   **DLA PIPER LLP (US)**
    Christopher M. Young (Bar No. 163319)
2   christopher.young@dlapiper.com
    Noah A. Katsell (Bar No. 217090)
3   noah.katsell@dlapiper.com
    Karen S. Chen (Bar No. 241038)
4   karen.chen@dlapiper.com
    401 "B" Street, Suite 1700
5   San Diego, CA 92101
    Telephone: (619) 699-2700
6   Facsimile: (619) 699-2701

7   Attorneys for Defendants BRIDGEPOINT
    EDUCATION, INC., ASHFORD UNIVERSITY,
8   and UNIVERSITY OF THE ROCKIES

9
                    UNITED STATES DISTRICT COURT
10
                  SOUTHERN DISTRICT OF CALIFORNIA
11

12  SCOTT ROSENDAHL and VERONICA          CV NO.  11CV61 WQH (WVG)
    CLARK, on behalf of themselves and all
13  others similarly situated,             **MEMORANDUM OF POINTS AND**
                                           **AUTHORITIES IN SUPPORT OF**
14              Plaintiff,                 **MOTION OF DEFENDANTS**
                                           **BRIDGEPOINT EDUCATION, INC.,**
15          v.                             **ASHFORD UNIVERSITY, AND**
                                           **UNIVERSITY OF THE ROCKIES TO**
16  BRIDGEPOINT EDUCATION, INC.,           **DISMISS CLASS ACTION COMPLAINT**
    ASHFORD UNIVERSITY, and
17  UNIVERSITY OF THE ROCKIES,             Date:    April 18, 2011
                                           Time:    11:00 a.m.
18              Defendants.                Judge:   Honorable William. Q. Hayes
                                           Ctrm.:   4
19
                                           **NO ORAL ARGUMENT UNLESS**
20                                         **REQUESTED BY THE COURT**

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II.   FACTUAL BACKGROUND .......................................................................... 3

III.   LEGAL STANDARD ................................................................................ 5

IV.   PLAINTIFFS DO NOT HAVE STANDING TO ASSERT ANY OF THE
      CLAIMS FOR RELIEF ASSERTED IN THE CAC ........................................... 6

      A.   Plaintiffs Have Not Alleged Facts to Establish Constitutional Standing. .............. 6

      B.   Plaintiffs Have Not Alleged Facts to Support Statutory Standing Under the
           UCL, FAL, and CLRA. ................................................................ 9

V.   PLAINTIFFS FAIL TO ALLEGE THEIR FRAUD BASED CLAIMS WITH
     SUFFICIENT PARTICULARITY ....................................................... 10

      A.   Plaintiffs' UCL, FAL, CLRA, Negligent Misrepresentation, and Fraud
           Claims All Sound in Fraud and Therefore Must Be Pled With Particularity
           Under Rule 9(b). .................................................................. 10

      B.   Plaintiffs Fail to Plead With Particularity the Statements Allegedly Made to
           Them. ............................................................................ 12

      C.   Plaintiffs Fail to Plead With Particularity Reliance On The Majority of the
           Alleged False Representation Set Forth in the CAC. ................................ 13

      D.   Plaintiffs Fail to Plead with Particularity That They Were Injured As a
           Result of Defendants' Statements or Actions. .................................... 15

VI.   PLAINTIFFS CANNOT STATE A CLAIM FOR VIOLATION OF THE CLRA. ........ 17

VII.   PLAINTIFFS' IMPLIED CONTRACT CLAIM FAILS TO PLEAD INTENT TO
       CONTRACT AND THEREFORE FAILS AS A MATTER OF LAW ...................... 17

VIII.   PLAINTIFFS FAIL TO ALLEGE ANY CONTRACT UPON WHICH THEIR
        CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH
        AND FAIR DEALING CAN BE BASED ................................................ 18

IX.   CONCLUSION ..................................................................... 19

1

## TABLE OF AUTHORITIES

2

**Page**

3

CASES

4

*Ashcroft v. Iqbal,*
5
___ U.S. ___, 129 S. Ct. 1937 (2009) ..................................................................... 5

6
*Balistreri v. Pacifica Police Dep't.,*
901 F.2d 696 (9th Cir. 1990) .............................................................................. 5

7
*Brownfield v. Bayer Corp.,*
8
No. 2:09-cv-00444, 2009 WL 1953035 (E.D. Cal. July 6, 2009) ........................................... 15

9
*California Emergency Physicians Medical Grp. v. PacificCare of Calif.,*
10
111 Cal. App. 4th 1127 (2003) ............................................................................ 18

11
*Californians for Disability Rights v. Mervyn's LLC,*
39 Cal. 4th 223 (2006) ..................................................................................... 9

12
*Carney v. Verizon Wireless Telecom, Inc.,*
13
2010 WL 1947635 (S.D. Cal. May 13, 2010) ............................................................... 13

14
*Dumas v. Kipp,*
90 F.3d 386 (9th Cir. 1996) ............................................................................... 6
15

16
*Engalla v. Permanente Med. Grp., Inc.,*
15 Cal. 4th (1997) ......................................................................................... 15

17
*Errico v. Pacific Capital Bank, N.A.,*
18
2010 WL 4699394 (N.D. Cal. Nov. 9, 2010) ............................................................... 17

19
*In re Actimmune Marketing Litig.,*
2009 WL 3740648 (N.D. Cal. Nov. 6, 2009) ........................................................... 14, 15
20

21
*In re GlenFed Inc. Securities Litigation,*
42 F.3d 1541 (9th Cir. 1994) ........................................................................... 6, 12

22
*In re Tobacco II Cases,*
23
46 Cal. 4th 298 (2009) .................................................................................... 10

24
*Inter-Mark-USA, Inc. v. Intuit, Inc.,*
2008 WL 552482 (N.D. Cal. Feb. 27, 2008) ............................................................... 18
25

26
*Kearns v. Ford Motor Co.,*
567 F.3d 1120 (9th Cir. 2009) ........................................................................ 10, 14

27
*Laster v. T-Mobile USA, Inc.,*
28
407 F. Supp. 2d 1181 (S.D. Cal. 2005) ............................................................. 10, 13, 15

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Love v. The Mail on Sunday*,
   2006 WL 4046180 (C.D. Cal. Aug. 15, 2006) ........................................................................ 18

*Lucas v. Dep't of Corrections*,
   66 F.3d 245 (9th Cir. 1995).................................................................................................... 6

*Marolda v. Symantec Corp.*,
   672 F. Supp. 2d 992 (N.D. Cal. 2009) ................................................................. 10, 13, 14, 15

*Meridian Project Sys., Inc. v. Hardin. Constr. Co.*,
   404 F. Supp. 2d 1214 (E.D. Cal. 2005).................................................................................. 10

*Meyer v. Sprint Spectrum L.P.*,
   45 Cal. 4th 634 (2009) ............................................................................................................ 9

*Palestini v. Homecomings Financial, LLC*,
   2010 WL 3339459 (S.D. Cal. Aug. 23, 2010) .................................................................. 13, 17

*Reddy v. Litton Indus., Inc.*,
   912 F.2d 291 (9th Cir. 1990)................................................................................................... 6

*Shamsian v. Atlantic Richfield Co.*,
   107 Cal. App. 4th 967 (2003) .......................................................................................... 14, 15

*Silva v. Providence Hospital of Oakland*,
   14 Cal.2d 762 (1939) ............................................................................................................ 17

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001).................................................................................................. 14

*Steel Co. v. Citizens For a Better Env't*,
   523 U.S. 83 (1998) ........................................................................................................ 6, 7, 8

*Traveler's Fire Ins. Co. v. Brock and Co.*,
   47 Cal. App. 2d 387 (1941).................................................................................................... 18

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (2003).............................................................................................................. 5

**STATUTES**

Cal. Bus. & Prof. Code § 17200 ............................................................................... 2, 9, 11, 14

Cal. Bus. & Prof. Code § 17203 .............................................................................................. 9

DLA PIPER LLP (US)
SAN DIEGO

-iii-

WEST\223281223.4

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS    11CV61 WQH (WVG)

## TABLE OF AUTHORITIES
### (continued)

Page

Cal. Bus. & Prof. Code § 17204 ................................................... 9

Cal. Bus. & Prof. Code § 17500 ................................................... 11

Cal. Bus. & Prof. Code § 17535 ................................................... 9

Cal. Civ. Code § 1621 ................................................................ 17

Cal. Civ. Code § 1750 ................................................................ 17

Cal. Civ. Code § 1780(a) ............................................................ 9


**OTHER AUTHORITIES**

California Private Postsecondary Education Act of 2009 .................. 11

Fed. R. Civ. P. 8 ............................................................... 5, 10, 14

Fed. R. Civ. P. 9(b) .......................................................... passim

Fed. R. Civ. P. 12(b)(6) ...................................................... 1, 5

U.S. Const. Art. III ........................................................ 2, 6, 7, 10

1        Defendants Bridgepoint Education, Inc. ("Bridgepoint"), Ashford University ("Ashford"),

2   and University of the Rockies ("The Rockies") (collectively, "Defendants") respectfully move

3   this Court for an order pursuant to Fed. R. Civ. P. 12(b)(6) dismissing each claim for relief in the

4   Class Action Complaint ("CAC") filed by Plaintiffs Scott Rosendahl ("Rosendahl") and Veronica

5   Clark ("Clark") (collectively, "Plaintiffs"), for failure to state a claim upon which relief can be

6   granted.

7   **I.**      **INTRODUCTION AND SUMMARY OF ARGUMENT**

8        Plaintiffs purport to represent a class of every person who ever enrolled in and/or attended

9   classes at Ashford or the The Rockies from March 1, 2005 to the present, claiming that each of

10   these students was uniformly "tricked" into enrollment through various alleged

11   misrepresentations and omissions.  The CAC amounts to a broad-based, baseless attack on

12   Bridgepoint's business model.  Unfortunately for Plaintiffs, this broad indictment, although heavy

13   with hyperbole and rhetoric, does not translate into legally actionable claims.  Plaintiffs' CAC

14   fails altogether to allege the predicate facts necessary to assert claims for relief under the law and

15   should therefore be dismissed with prejudice.

16        Plaintiffs Rosendahl and Clark were each afforded a quality higher education opportunity

17   by attending Ashford and the The Rockies, respectively.  After each enrolled in online programs

18   and attended classes for more than a year, each made a respective decision to no longer pay for

19   his or her education.  Plaintiffs now claim that they, along with every other student that ever

20   enrolled in and/or attended classes at Ashford or The Rockies since March 2005 was the victim of

21   fraudulent representations related to:  (1) the cost and value of attending Ashford and The

22   Rockies; (2) the value and utility of degrees from Ashford and The Rockies; (3) earnings potential

23   following graduation; (4) federal loan repayment obligations; and (5) the ability of a degree from

24   The Rockies' Doctor of Psychology Program to qualify students for professional licensure.

25   (CAC, ¶¶ 53, 59-60, 62, 65, 72(d), 76.)  On the basis of these purported misrepresentations,

26   Plaintiffs seek damages and injunctive relief against Defendants for breach of implied contract,

27   breach of the implied covenant of good faith and fair dealing, violation of

28   /////

1   Business and Professions Code sections 17200 ("UCL") and 17500 ("FAL"), violation of the

2   Consumer Legal Remedies Act ("CLRA"), negligent misrepresentation, and fraud.

3          Plaintiffs' claims fail in their totality for a number of reasons, as set forth below.

4          **First,** Plaintiffs lack standing under Article III of the United States Constitution, the UCL,

5   the FAL, and the CLRA to bring the claims they have alleged because they cannot establish

6   injury-in-fact.  Plaintiffs fail to meet this threshold requirement because the allegations in the

7   CAC do not tie Rosendahl or Clark to a concrete injury.  Neither claims to not have received the

8   education he or she paid for, that he or she could not transfer their course units to a different

9   university (or that he or she even tried to do so) and continue his or her education, or that their

10  education was without value.  In other words, each received an education and could have

11  continued to completion of their degrees at Ashford and The Rockies.  Moreover, and critically,

12  although the CAC is replete with broad-based and generalized alleged misrepresentation,

13  Rosendahl and Clark do not claim that *they* were actually exposed to the majority of these alleged

14  misrepresentations prior to enrolling at Ashford and The Rockies, or that, even if they were, they

15  relied on any of this alleged fraudulent information in deciding to enroll at Ashford and The

16  Rockies and were therefore injured by it.  Consequently, they have failed to allege injury in fact

17  flowing from Defendants' alleged misrepresentations.  In the absence of standing to sue, each and

18  every one of Plaintiffs' claims fails to state a claim for which relief can be granted.

19         **Second**, with respect to their claims under the UCL, FAL, and CLRA and for negligent

20  misrepresentation and fraud, which are all premised on fraud, Plaintiffs fail to allege specific facts

21  as required under Federal Rule of Civil Procedure 9(b) concerning the "who, what, when, where,

22  and how" of the misrepresentations allegedly made by Defendants to them.  Indeed, in most

23  instances Plaintiffs do not even claim that they heard, saw, read or were otherwise exposed to the

24  alleged fraudulent representations scattered throughout the CAC prior to enrolling at Ashford and

25  The Rockies.  It is therefore an impossibility that Plaintiffs relied on these statements.  Pleading

26  reliance with particularity is also a necessary element of Plaintiffs' UCL, FAL, CLRA, negligent

27  misrepresentation, and fraud claims.  Plaintiffs have failed to plead the reliance element of their

28  claims with the requisite particularity.

1    **Third,** Plaintiffs fail to plead all necessary elements of their remaining contract claims.

2    With respect to Plaintiffs' first cause of action for breach of implied contract, Plaintiffs fail to

3    allege any intent on the part of any of the Defendants to create a contract in making any of the

4    above statements to Plaintiffs.  Similarly, with respect to Plaintiffs' second cause of action for

5    breach of the implied covenant of good faith and fair dealing, Plaintiffs fail to allege the existence

6    of any contract upon which the covenant can be based.  As such, Plaintiffs' first and second

7    claims also fail.

8         For the above reasons, Defendants respectfully request that the Court dismiss the CAC

9    with prejudice.

10   **II.      FACTUAL BACKGROUND**

11        Bridgepoint is a for-profit higher education company founded in 2004 and headquartered

12   in San Diego, California.  (CAC, ¶ 2.)  In March 2005, Bridgepoint purchased The Franciscan

13   University of the Prairies, a then non-profit university, renamed it Ashford University, and

14   converted it into a for-profit university operating in both an online and campus capacity.  (CAC,

15   ¶ 24.)  Two years later, in September 2007, Bridgepoint purchased the Colorado School of

16   Professional Psychology, also a non-profit university, renamed it University of the Rockies, and

17   converted it into a for-profit university operating in both an online and campus capacity.  (CAC,

18   ¶ 24.)  Both Ashford and The Rockies maintain a physical campus, but the majority of the

19   universities' students are enrolled in an online program.  (CAC, ¶¶ 25-26.)

20        The CAC focuses on Defendants' alleged marketing and enrollment "tactics," and claims

21   that Defendants' primary focus is making money rather than providing their students with a

22   quality higher education that enables them to obtain a job in their desired profession.  (CAC, ¶ 7.)

23   Specifically, the CAC alleges Defendants misrepresented to students that: (1) Ashford "offers one

24   of the lowest tuition costs available" (CAC, ¶ 53); (2) the cost to earn a degree at The Rockies

25   was less than it actually was, as representations regarding the total cost of a degree did not

26   include administrative fees or the total length of the program (CAC, ¶¶ 59-60); (3) degrees from

27   Ashford and The Rockies were "equally valuable, accepted, and honorable as any equivalent

28   degree [the student] could earn from another accredited school or university, whether on a

1    traditional campus or online" (CAC, ¶ 62); (4) The Rockies' "goal is to provide a professional

2    graduate education in psychology to individuals who seek licensure as psychologists[]" (CAC,

3    ¶ 65); (5) the salaries quoted to students is representative of their earning potential when, in fact,

4    the quoted salaries were earned by less than 5% of individuals in those professions (CAC,

5    ¶ 72(d)); and (6) repaying federal loans "isn't that big a deal[]" (CAC, ¶ 76).

6           Rosendahl and Clark were two students who allege that they were subjected to the alleged

7    misrepresentations set forth above.  Rosendahl was an online student at Ashford in 2008 and

8    2009, and Clark was an online student at The Rockies in 2009 and 2010.  (CAC, ¶¶ 22-23.)  After

9    receiving the benefit of their respective educations, for which Rosendahl still owes over $4,000

10   and Clark over $23,000, each now claims he or she was misled into enrolling at Ashford and The

11   Rockies.  (*Id.*)  Rosendahl claims he was induced into enrolling at Ashford because he was told

12   Ashford offered "one of the cheapest undergraduate degree programs in the country."  (CAC,

13   ¶ 58.)  However, Rosendahl does not claim that:  (1) he was provided a quote regarding the cost

14   to attend Ashford; (2) his education was without value; (3) he was not able to transfer his Ashford

15   units to another university; (4) he was provided information regarding earnings potential; or (5)

16   any representations were made to him regarding his obligation to repay student loans.  Clark

17   claims she enrolled at The Rockies because she was told the Doctor of Psychology Program

18   would qualify her for licensure as a clinical psychologist in the United States military.  (CAC,

19   ¶ 23.)  She does not claim, however, that:  (1) she was provided any information regarding

20   earning potential; or that (2) any representations were made to her regarding her obligation to

21   repay student loans.  Plaintiffs nevertheless seek to represent a nationwide class of all persons

22   who enrolled and/or attended classes offered by Ashford or The Rockies from March 1, 2005 to

23   the present (CAC, ¶ 34) regardless of whether these representations were made to them, whether

24   they graduated from Ashford or the Rockies, transferred their credits, or were otherwise totally

25   satisfied with the higher education they were provided.

26   /////

27   /////

28   /////

III.   **LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure[1] should be granted where a complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.  *See Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990).  To survive a motion to dismiss, a complaint must meet the minimum pleading requirements under Federal Rule of Civil Procedure 8 and "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (citations omitted). The Court explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully . . . Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id*. (citations omitted). Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and the court is not bound to "accept as true a legal conclusion couched as a factual allegation." *Id*. at 1949-50 (citations omitted).

In addition, fraud claims or claims premised on allegedly fraudulent statements or actions must be pled with particularity.  Fed. R. Civ. P. 9(b); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-1104 (2003) (noting that claims grounded in fraud must satisfy Rule 9(b)).  "Rule 9(b) demands that, when averments of fraud are made, the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong."  *Id*. at 1106 (citations and internal quotations omitted).  Plaintiffs must not only include statements regarding "'the who, what, when, where, and how' of the misconduct charged[,]" they must also "set forth what is false or misleading about a statement, and why it is false." *Id*. (citations omitted).  "In other words, the plaintiff must set forth an explanation as to why the statement or omission

/////

---

[1] All subsequent references to the Federal Rules are to the Federal Rules of Civil Procedure, unless otherwise stated.

1   complained of was false or misleading[]" at the time the statement or omission was made.  *In re*

2   *GlenFed Inc. Securities Litigation*, 42 F.3d 1541, 1548 (9th Cir. 1994).  If a complaint does not

3   meet these pleading standards, it should be dismissed, and it should be dismissed with prejudice if

4   amendment would be futile. *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996); *Lucas v. Dep't of*

5   *Corrections*, 66 F.3d 245, 248 (9th Cir. 1995); *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296

6   (9th Cir. 1990).

7   **IV.   PLAINTIFFS DO NOT HAVE STANDING TO ASSERT ANY OF THE CLAIMS**
         **FOR RELIEF ASSERTED IN THE CAC**

8

9        As a threshold matter, Plaintiffs lack standing to assert claims against Defendants for

10  breach of implied contract, breach of the implied warranty of good faith and fair dealing,

11  violation of the UCL, FAL, and CLRA, negligent misrepresentation, or fraud.  Plaintiffs seek to

12  impose liability against Defendants for alleged misrepresentations that Plaintiffs were neither

13  exposed to nor relied upon, and for which they have alleged no concrete injury.

14       **A.   Plaintiffs Have Not Alleged Facts to Establish Constitutional Standing.**

15       Under Article III of the United States Constitution, plaintiffs must allege three things to

16  establish standing to bring claims in federal court:  (1) injury in fact—a harm suffered that is

17  "'concrete' and 'actual or imminent, not conjectural, or hypothetical[;]'" (2) causation between

18  their injury and the challenged conduct—"a fairly traceable connection between [their] . . . injury

19  and the complained-of conduct of the defendant[;]" and (3) "redressability—a likelihood that the

20  requested relief will redress the alleged injury." *Steel Co. v. Citizens For a Better Env't*, 523 U.S.

21  83, 103 (1998) (citations omitted).  Plaintiffs claim, in a conclusory fashion, that they were

22  injured as a result of Defendants' allegedly false representations.  However, in the absence of any

23  allegations demonstrating concrete injury resulting from Defendants' statements, Plaintiffs do not

24  have standing to bring any of their asserted claims against Defendants.

25       First, Plaintiffs have failed to allege injury in fact.  The only claim made by Rosendahl in

26  the CAC is that he was told Ashford offered "one of the cheapest undergraduate degree programs

27  in the country" and that he was "*in large part*" induced to enroll because of this alleged

28  misrepresentation.  (CAC, ¶ 58 (emphasis added).)  Although the CAC boldly and repeatedly

1   criticizes Ashford for making allegedly false representations, these allegations are not tied to what

2   the purported class representative—Rosendahl—actually heard.  In fact, the CAC contains not a

3   single allegation that:  (1) Rosendahl was unable to transfer his Ashford course units to another

4   university (or that he even attempted to do so) even though the CAC alleges that "A large number

5   of universities will not accept any transfer units from any online universities . . ." (CAC, ¶ 63);

6   (2) his education at Ashford was worthless, even though the CAC alleges "[t]hat degrees from

7   Ashford and The Rockies would only be of *de minimis* use to helping graduates seek employment

8   in their chosen profession[]" (CAC, ¶ 72(c)); (3) he did not receive the education he paid for; (4)

9   he obtained a job with a lower salary than represented even though the CAC alleges "[t]hat

10   salaries quoted to students as representative of their 'earning potential' in certain professions were

11   earned by less than 5% of all individuals in those professions[]" (CAC, ¶ 72(d)); (5) or that he

12   was not able to repay his federal student loans (or that he even received federal financial aid to

13   attend Ashford), even though the CAC alleges that "Bridgepoint . . .*misleadingly downplays*

14   *students' federal loan repayment obligations, often telling prospective students not to worry*

15   *about loan repayment or telling students that they don't have to worry about repaying students*

16   *loans or that the federally mandated obligation to repay one's student loans 'isn't that big a*

17   *deal[]'"* (CAC, ¶ 76 (emphasis in original)).

18          The CAC's allegations with respect to Clark's "injury" fare no better.  The CAC makes

19   bold statements that Clark's "degree was worthless[,]" but Clark never received a degree from the

20   Doctor of Psychology Degree at The Rockies, as she dropped out after only completing one year

21   of the three-year program.  (CAC, ¶¶ 60, 70-71.)  That "[t]he Navy refused even to look at her

22   transcript, explaining that any online degree that was not accredited by the American

23   Psychological Association (APA) and was unacceptable for any psychology position with the

24   U.S. military . . ." fails to establish injury in fact, as it is undisputed that Clark received *no degree*

25   from The Rockies that could be declined by the Navy as insufficient for employment with the

26   military.  Consequently, Clark's "injury" is conjectural and hypothetical, and is insufficient to

27   accord her with standing under Article III.  *See Steel Co. v. Citizens For a Better Env't*, 523 U.S.

28   at 103.

1    Second, even assuming that Plaintiffs were injured, which they were not, Plaintiffs have

2    not pled that they were injured *as a result* of Defendants' purported misrepresentations. *Id*.

3    Plaintiffs seek to impose liability on Defendants for their alleged misrepresentations regarding the

4    quality of the universities' academic instruction, students' post-graduation job prospects,

5    employability and earnings potential, the utility and value of students' education at the

6    universities, loan repayment obligations, and the ability of the Doctor of Psychology Program to

7    qualify students for professional licensure.  Plaintiffs also allege that Defendants improperly

8    compensated their enrollment advisors by paying them on commission and on the basis of

9    number of students enrolled, and that Defendants failed to make information regarding cost and

10   attendance of the universities readily available to them.

11   However, Plaintiffs fail to allege that either Rosendahl or Clark was provided information,

12   let alone false information, about the quality of academic instruction, post-graduation job

13   prospects, earnings potential, utility and value of education, loan repayment obligations and

14   professional licensure, or that either suffered any injury as a result of Defendants' alleged

15   misrepresentations.  Indeed, how could the purported representatives of this class be injured by

16   statements they have not even alleged to have heard?  The only claim made by Rosendahl in the

17   CAC is that he was told Ashford offered "one of the cheapest undergraduate degree programs in

18   the country" (CAC, ¶ 58)—there are no allegations that Rosendahl heard, saw, or read any of the

19   other statements.  Similarly, Clark asserts she received representations regarding the cost to attend

20   The Rockies and the ability of a degree from the Doctor of Psychology Program to qualify her for

21   professional licensure (CAC, ¶¶ 60, 68), but makes no claim that she heard, saw, or read any of

22   the other statements.  If Plaintiffs were not exposed to statements regarding post-graduation job

23   prospects, earnings potential, or loan repayment obligations, they could not have relied upon

24   these representations, nor could they have been injured by these representations.

25   Furthermore, neither Rosendahl nor Clark claim they were injured as a result of

26   Defendants' purported failure to make information regarding cost of attendance at the universities

27   readily available to them (or that they even attempted to obtain such information before enrolling

28   in the universities) or Defendants' alleged improper compensation of its enrollment advisors (or

-8-

1    that they were even aware of this policy).  If Plaintiffs did not attempt to obtain information about

2    the universities prior to enrolling, and were not aware of Defendants' compensation policies, then

3    they did not rely on these representations in enrolling at the universities and these representations

4    and conduct could not, therefore, have caused Plaintiffs' injuries.  Plaintiffs lack standing to bring

5    causes of action against Defendants based on alleged misrepresentations to which they were not

6    exposed, and Plaintiffs' claims should be dismissed with prejudice.

7    **B.**    **Plaintiffs Have Not Alleged Facts to Support Statutory Standing Under the**
     **UCL, FAL, and CLRA.**

8

9            In addition to Constitutional standing requirements, plaintiffs asserting claims under the

10   UCL or CLRA must meet California's standing requirements under Proposition 64.  Prior to the

11   California voters' passage of  Proposition 64, plaintiffs could sue companies on purported claims

12   of false advertising and unfair competition without alleging or proving that they suffered any

13   economic injury resulting from the challenged advertising, or even that they saw the advertising.

14   In 2004, California voters put an end to such claims with Proposition 64, which added a specific

15   standing requirement to the UCL and FAL.  Following Proposition 64, sections 17204 and 17535

16   of the Business and Professions Code were amended to require plaintiffs to have "suffered injury

17   in fact and lost money or property as a result of the unfair competition" in order to bring UCL and

18   FAL claims (the latter of which are included within the statutory definition of unfair competition

19   claims).  *See* Cal. Bus. & Prof. Code §§ 17200 (defining "unfair competition" to include any

20   unlawful, unfair or fraudulent business act and untrue or misleading advertising in violation of

21   section 17500); 17203 (imposing requirement that private plaintiffs meet standing requirements

22   of section 17204); 17204 (imposing requirement that plaintiff have suffered injury in fact and

23   have lost money or property as a result of the unfair competition).  The CLRA contains the same

24   standing requirement.  *See* Cal. Civ. Code § 1780(a) ("Any consumer who suffers any damage as

25   a result of . . ."); *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 641-46 (2009).

26           Proposition 64 was meant to curtail suits on behalf of "clients that have [had] not used the

27   defendant's product or service, viewed the defendant's advertising, or had any other business

28   dealing with the defendant . . ."  *Californians for Disability Rights v. Mervyn's LLC*, 39 Cal. 4th

-9-

223, 228 (2006).  Thus, in order to have standing to assert UCL or CLRA claims, a plaintiff must allege facts showing actual reliance on the challenged statements and resulting injury in fact.  *In re Tobacco II Cases*, 46 Cal. 4th 298, 326-28 (2009); *see also Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1194 (S.D. Cal. 2005) (rejecting UCL claim for lack of standing where "none of the named Plaintiffs allege that they saw, read, or in any way relied on the advertisements; nor do they allege that they entered into the transaction as a result of those advertisements").

For the same reasons that Plaintiffs lack standing under Article III, they are also without standing to bring claims under the UCL, FAL, or the CLRA.  As discussed above, Plaintiffs have failed to allege both injury in fact and injury resulting from Defendants' representations.  Consequently, Plaintiffs lack standing to bring claims under the UCL, FAL, or the CLRA.

## V.   PLAINTIFFS FAIL TO ALLEGE THEIR FRAUD BASED CLAIMS WITH SUFFICIENT PARTICULARITY

Even if Plaintiffs had standing to pursue their claims, which they do not, they fail to plead their fraud-based claims with particularity, which is a requirement under the Federal Rules.  Because Plaintiffs' UCL, FAL, CLRA, negligent misrepresentation, and fraud claims fail to meet the pleading requirements of Rule 9(b), and even Rule 8, they fail as a matter of law and should be dismissed.

### A.   Plaintiffs' UCL, FAL, CLRA, Negligent Misrepresentation, and Fraud Claims All Sound in Fraud and Therefore Must Be Pled With Particularity Under Rule 9(b).

Claims brought under the UCL, FAL, and CLRA are subject to the heightened pleading requirements of Rule 9(b) where the claims sound in fraud or are grounded in fraud.  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125-1126 (9th Cir. 2009) (holding that all claims, including claims brought under the UCL and the CLRA, must be pled with particularity under Rule 9(b) where the claims were based on the same fraudulent conduct); *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 997-998 (N.D. Cal. 2009) (same).  Similarly, where a negligent misrepresentation claim is premised upon the same set of allegedly fraudulent statements, the claim for negligent misrepresentation must be pled with particularity under Rule 9(b).  *Meridian Project Sys., Inc. v. Hardin. Constr. Co.*, 404 F. Supp. 2d 1214, 1219 (E.D. Cal. 2005) (noting that it is "well-settled

-10-

1  in the Ninth Circuit" that the heightened pleading standard applies to negligent misrepresentation

2  claims).

3        It is undisputed that Plaintiffs must plead their fraud based claims with the specificity

4  required by Rule 9(b).  Plaintiffs allege that Defendants misrepresented: (1) the ability of The

5  Rockies to qualify students for licensure as psychologists; (2) that Ashford and The Rockies offer

6  among the lowest tuition rates in the country; (3) students' obligation to repay federal loans;

7  (4) the value and utility of a degree from Ashford or The Rockies; (5) job placement prospects;

8  and (6) earnings potential after graduation.  (CAC, ¶¶ 137, 140.)  Plaintiffs claim that these

9  misrepresentations were part of a plan to induce Plaintiffs to enroll at the universities, perpetrated

10  through Defendants' improper compensation to their enrollment advisors and requirements that

11  prospective students provide personal contact information to obtain information about the

12  universities.  (CAC, ¶¶ 51, 89, 116, 138.)  Plaintiffs' UCL, FAL, CLRA, and negligent

13  misrepresentation claims are premised upon the same allegedly fraudulent representations and

14  conduct:

15      &bull;   "Plaintiffs are entitled to enjoin Defendants' wrongful practices and to
         obtain restitution for the monies paid to Defendants by reason of
16           Defendants' . . . deceptive acts and practices[;]" "As a direct and
         proximate result of the acts and practices alleged above, members of
17           the Class and the general public who enrolled in and/or attended
         classes at Ashford or The Rockies have been injured[;]" "Defendants
18           violated Bus. & Prof. Code § 17200 *et seq.* because they . . .
         committed fraud . . ."  (CAC, ¶¶ 113-115.)
19

20      &bull;   "Defendants . . . violated numerous provisions of the California
         Private Postsecondary Education Act of 2009.  Under this Act, private
21           postsecondary institutions may not: (a) Promise or guarantee
         employment, or otherwise overstate the availability of jobs upon
22           graduation . . .; (d) Compensate an employee involved in recruitment,
         enrollment . . . to students on the basis of a commission . . .; (e)
23           Require a prospective student to provide personal contact information
         in order to obtain . . . education program information . . ."  (CAC,
24           ¶ 116.)

25      &bull;   "Defendants violated Bus. & Prof. Code § 17500 *et seq.* by making or
         disseminating . . . false and misleading statements on their websites
26           about the true cost of attending Bridgepoint's universities, the quality
         of their academic instruction, students' post-graduation job prospects,
27           employability and earnings potential, and The Rockies accreditation
         under the APA and ability to quality graduates for professional
28           psychology licensure.  These false and misleading statements were
         made with the intent to induce the general public, including Plaintiffs

DLA PIPER LLP (US)
SAN DIEGO

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS    11CV61 WQH (WVG)

1    and the Class, to enroll in Defendants' online degree and certificate
     programs." (CAC, ¶¶ 122-124.)

2
        •    "Defendants violated the Consumer Legal Remedies Act by
3            misrepresenting to Plaintiffs and members of the Class the true cost of
             attendance at Ashford and The Rockies, by misrepresenting: the
4            quality of academic instruction at these schools, students' post-
             graduation employability, job placement prospects, and qualification
5            for professional licensure, and prospective students' federal financial
             assistance options." (CAC, ¶¶ 128-129.)

6
        •    "Defendants made uniform and identical material written
7            representations regarding the cost of attending Ashford and The
             Rockies, the value of the degree programs offered at these schools the
8            quality of the schools as compared to other institutions, and students'
             post-graduation qualification for certain professional licenses.  . . .
9            When Defendants made these representations and omissions, they had
             no reasonable grounds for believing them to be true. Nonetheless,
10           Defendants made these material representations and omissions in
             order to induce Plaintiffs and the Class to act in reliance on these
11           representations and to enroll at Ashford or The Rockies . . ." (CAC,
             ¶ 132.)

12

13   Accordingly, these causes of action plainly sound in fraud, and they must be pled with

14   particularity under Rule 9(b).

15       **B.    Plaintiffs Fail to Plead With Particularity the Statements Allegedly Made to**
                 **Them.**

16

17       The CAC lacks specificity regarding the "who, what, when, and where" of the allegedly

18   fraudulent statements made to Rosendahl and Clark.  The only misrepresentation purportedly

19   made to Rosendahl was his enrollment advisor's statement that "Ashford offered 'one of the

20   cheapest undergraduate degree programs in the country.'" (CAC, ¶ 58.)  This allegation is

21   patently deficient under Rule 9(b), as it fails to specify when or where this statement was

22   allegedly made to Rosendahl, who made the statement to him, or why the statement was false at

23   the time it was made.  *In re GlenFed, Inc. Securities Litigation*, 42 F.3d at 1547.  That the United

24   States Department of Veterans Affairs' (the "VA") August 30, 2010 table of the most expensive

25   public colleges reflects per unit costs less than Ashford's rates of $372 per credit hour fails to

26   explain why the statement was false at the time it was made to Rosendahl.  (CAC, ¶¶ 54-55.)

27   Rosendahl was a student at Ashford from 2008-2009—at least one year before the VA's table was

28   published.  (CAC, ¶ 23.)  Nowhere does the CAC set forth costs to attend other universities in the

1  2008-2009 time frame, nor does the CAC specify how much Rosendahl paid per unit at Ashford.

2  As such, Plaintiffs fail to properly allege that Defendants' purported statement to Rosendahl

3  regarding the value of his education was false when made.  Moreover, the comparison to the

4  VA's table of public tuition rates for undergraduate is inapposite, as Ashford and the The Rockies

5  are not public, state universities or institutions and The Rockies offers a graduate degree program.

6  (CAC, ¶ 64.)

7      With respect to Clark, the CAC alleges she was told: (1) the Doctor of Psychology

8  Program at The Rockies would qualify her for licensure as a clinical psychologist in the United

9  States military, (2) the total cost of her degree would be $53,000, and (3) her degree was of great

10  value compared to other schools because of the quality of the instruction, the quality of the

11  residency program, and her qualification for and ability to obtain professional licensure after

12  graduation.  (CAC, ¶¶ 23, 60, 68.)  As with the purported misrepresentation made to Rosendahl,

13  the statements made to Clark fail to meet the heightened pleading standard for fraud-based

14  claims.  These allegations do not set forth when or where these statements were allegedly made to

15  Clark or who made the statements to her.  As such, the CAC fails to allege any of the fraud-based

16  claims with specificity and they fail as a matter of law.

17      **C.**      **Plaintiffs Fail to Plead With Particularity Reliance On The Majority of the**
            **Alleged False Representation Set Forth in the CAC.**

18

19      The UCL, FAL, CLRA, negligent misrepresentation, and fraud claims fail for the

20  additional reason that Plaintiffs do not allege they relied on the purported misrepresentations

21  regarding the cost, value, and utility of a degree from Ashford or The Rockies, or that any other

22  action by Defendants, caused them to be damaged.  This is insufficient as a matter of law under

23  Rule 9(b), and these claims therefore fail.

24      To set forth valid claims under the UCL and the CLRA, plaintiff must allege that he or

25  she acted in reliance on defendant's representations or action.  *Palestini v. Homecomings*

26  *Financial, LLC*, 2010 WL 3339459, at *10 (S.D. Cal. Aug. 23, 2010); *Laster v. T-Mobile USA,*

27  *Inc.*, 407 F. Supp. 2d at 1994; *Carney v. Verizon Wireless Telecom, Inc.*, 2010 WL 1947635, at *3

28  (S.D. Cal. May 13, 2010); *Marolda v. Symantec Corp.*, 672 F. Supp. 2d at 1003.  Similarly,

claims for negligent misrepresentation or fraud must allege that plaintiff was damaged as a result of his reliance on defendant's misrepresentations or omissions.  *Shamsian v. Atlantic Richfield Co.*, 107 Cal. App. 4th 967, 983 (2003); *Kearns v. Ford Motor Co.*, 567 F.3d at 1126.  Further, where the claims sound in fraud, reliance must be pled with specificity.  *In re Actimmune Marketing Litig.*, 2009 WL 3740648 at *10-11 (N.D. Cal. Nov. 6, 2009) (dismissing plaintiff's claim under the fraud prong of the UCL for failure to allege reliance with "sufficient specificity from which the court could infer that . . . the misrepresentations caused injury to plaintiffs by inducing them to pay for [the product]"); *Marolda*, 672 F. Supp. 2d at 997.  "[A]llegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences[]" are disregarded.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Here, Plaintiffs fail to allege they relied on each representation allegedly made by Defendants in deciding to enroll at Ashford and the The Rockies.  As set forth in section V.A., *supra*, Plaintiffs allege Defendants made misrepresentations regarding:  (1) the quality of the universities' academic instruction, (2) students' post-graduation job prospects, employability and earnings potential, (3) the utility and value of students' education at the universities, and (4) the ability of the Doctor of Psychology Program to qualify students for professional licensure.  (CAC, ¶¶ 113-115, 122-124, 128-129, 132.)  Plaintiffs then summarily claim they relied on these representations in deciding to enroll at the universities.  (CAC, ¶¶ 123, 132, 136.)[2]  Not only is this insufficient to plead reliance under Rule 9(b), but it fails to even meet the minimum pleading standard under Rule 8.

First, Plaintiffs' claims of reliance are nothing more than conclusory allegations unsupported by any facts, and should be disregarded.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); Fed. R. Civ. P. 8.  Indeed, Rosendahl alleges in the CAC he was only exposed to one representation and that this one representation "in large part" induced him to enroll at Ashford: that Ashford offered an education at a good price point.  (CAC, ¶ 58.)  Clark alleges she was exposed to only three statements:  (1) the Doctor of Psychology Program at The

---

[2] With respect to their claims under Business and Professions Code section 17200 and the CLRA, Plaintiffs fail to allege reliance, and these causes of action should be dismissed for this reason alone.

Rockies would qualify her for licensure as a clinical psychologist in the United States military, (2) the total cost of her degree would be $53,000, and (3) her degree was of great value compared to other schools because of the quality of the instruction, the quality of the residency program, and her qualification for and ability to obtain professional licensure after graduation.  (CAC, ¶¶ 23, 60, 68.)  Plaintiffs, therefore, could not possibly have relied on any representations regarding students' post-graduation job prospects, employability and earnings potential or the utility and value of students' education at the universities and they, therefore fail to plead reliance on these statements.

Second, Plaintiffs do not identify the alleged misrepresentations to which they were exposed, thus failing to provide "allegations of sufficient specificity from which the court [can] infer that . . . the misrepresentations caused injury" to Plaintiffs by inducing them to enroll at the Universities.  *In re Actimmune Marketing Litig.*, 2009 WL 3740648 at *10.  The insufficiency of these allegations is further compounded by the broad nature of the CAC, which challenges a variety of alleged statements and representations by Defendants.  To the extent Plaintiffs relied on some, but not all, of the alleged misrepresentations, those statements not relied upon cannot form the basis for their claims and should be stricken as explained in Defendants' accompanying motion to strike.

### D.        Plaintiffs Fail to Plead with Particularity That They Were Injured As a Result of Defendants' Statements or Actions.

Finally, Plaintiffs fail to plead, as they must, that they were injured as a result of Defendants' statements or actions.  *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th, 951, 974 (1997); *Laster v. T-Mobile United States, Inc.*, 407 F.Supp.2d at 1194; *In re Actimmune Marketing Litig.*, 2009 WL 3740648 at *10; *Marolda v. Symantec Corp.*, 672 F. Supp. 2d at 1003 ; *Shamsian v. Atlantic Richfield Co.*, 107 Cal.App. 4th at 983.  In pleading resultant injury, threadbare, conclusory allegations that they have "suffered injury in fact" as a result of Defendants' misrepresentations or actions is insufficient to state a claim for relief.  *Brownfield v. Bayer Corp.*, No. 2:09-cv-00444, 2009 WL 1953035, at *4 (E.D. Cal. July 6, 2009).

/////

1    Plaintiffs' assertions that they suffered damages as a result of Defendants' alleged

2    misrepresentations and conduct are nothing more than conclusory statements:

3    • "As a proximate result of the acts and practices alleged above,
        members of the Class and the general public who enrolled in
4        and/or attended classes at Ashford or The Rockies have been
        injured."  (CAC, ¶ 114.)
5
6    • "As a direct and proximate result of the acts and practices
        alleged above, members of the Class and the general public
        who enrolled in and/or attended classes at Ashford or The
7        Rockies have been injured."  (CAC, ¶ 123.)

8    • "By reason of the above-described violations of the Consumer
        Legal Remedies Act, Plaintiffs and each member of the Class
9        have suffered damages."  (CAC, ¶ 130.)

10    • "As a proximate result of Defendants' negligent conduct,
        Plaintiffs and members of the Class have been damaged . . ."
11        (CAC, ¶ 134.)

12    • "Plaintiffs and the Class did in fact justifiably rely on these
        misrepresentation and omissions, resulting in substantial
13        damage to Plaintiffs and the Class."  (CAC, ¶ 136.)

14    Plaintiffs' conclusory allegations of injury and damages are devoid of any facts and should be

15    disregarded.  Notably, Plaintiffs do not allege how or in what manner they were damaged—for

16    example, they do not allege that:  they did not receive the education they paid for, their course

17    units were not transferrable to another university, they received a worthless degree, they obtained

18    a job with a lower salary than represented, or they were not able to repay their federal student

19    loans.

20    Nor does the CAC contain a single allegation that Plaintiffs were injured as a result of

21    Defendants':  (1) purported concealment on its websites of information regarding cost and

22    attendance of the universities (or that they even attempted to obtain such information from the

23    websites); (2) improper compensation of its enrollment advisors (or that they were even aware of

24    Defendants' compensation policies); (3) improper application for the maximum amount of federal

25    financial aid (or that they even applied for or received federal financial aid); or (4) targeting of

26    active military and military veterans with deceptive tactics (or that they, themselves, were

27    targeted based on their military status).

28    /////

1   Despite Clark's intimation that her "degree was worthless" (CAC, ¶ 71), Clark never

2   received a degree from The Rockies, having dropped out after having completed only one year of

3   the Doctor of Psychology Program.  (CAC, ¶¶ 60, 70.)  Therefore, even if a degree from the

4   Doctor of Psychology Program failed to provide her with the benefits allegedly represented to

5   her, Clark has alleged no actual injury, as she never received a degree from The Rockies.  In the

6   absence of any specific allegations that Plaintiffs were injured as a result of Defendants'

7   statements or actions, the Court should disregard Plaintiffs' conclusory allegations and dismiss

8   these claims for failure to state a claim with the requisite specificity under Rule 9(b).

9   **VI.    PLAINTIFFS CANNOT STATE A CLAIM FOR VIOLATION OF THE CLRA.**

10   Plaintiffs' fifth cause of action for violation of the CLRA fails for the independent reason

11   that it fails to identify the particular section of the CLRA Defendants allegedly violated.

12   Plaintiffs instead generally allege they assert a claim against Defendants "under California Civil

13   Code § 1750 *et seq.*"  On this ground alone, Plaintiff's claim under the CLRA should be

14   dismissed.  *Palestini v. Homecomings Financial, LLC*, 2010 WL 3339459, at *11 (S.D. Cal.

15   Aug. 23, 2010) (holding that plaintiff's failure to identify the particular section of the CLRA

16   allegedly violated support dismissal of this claim).

17   **VII.   PLAINTIFFS' IMPLIED CONTRACT CLAIM FAILS TO PLEAD INTENT TO
         CONTRACT AND THEREFORE FAILS AS A MATTER OF LAW**
18

19   Plaintiffs attempt to assert a breach of implied contract cause of action against

20   Defendants, but fail to allege any of the elements of the claim.  Consequently, Plaintiffs' first

21   cause of action fails as a matter of law.

22   An implied contract "consists of obligations arising from a mutual agreement and intent to

23   promise where the agreement and promise have not been expressed in words."  *Silva v.*

24   *Providence Hospital of Oakland*, 14 Cal.2d 762, 773 (1939); Cal. Civ. Code § 1621.  It is "in no

25   less degree than an express contract, [and so] must be founded upon an ascertained agreement of

26   the parties to perform it . . . the very heart of this kind of agreement is an intent to promise."

27   *Errico v. Pacific Capital Bank, N.A.*,  2010 WL 4699394, at *10 (N.D. Cal. Nov. 9, 2010)

28   (citations omitted).  Without a mutual intention to contract, there can be no implied contract;

1   hence, "the assumption, intention or expectation of either party alone, not made known to the

2   other, can give rise to no inference of an implied contract in accordance therewith." *Traveler's*

3   *Fire Ins. Co. v. Brock and Co.*, 47 Cal. App. 2d 387, 392 (1941). In order to plead a cause of

4   action for implied contract, "the facts from which the promise is implied must be alleged."

5   *California Emergency Physicians Medical Grp. v. PacificCare of Calif.*, 111 Cal. App. 4th 1127,

6   1134 (2003).

7        Plaintiffs claim Defendants promised they would: (1) provide a high-quality education at a

8   good value; (2) prepare Plaintiffs for successful job placement in their chosen profession;

9   (3) enable Plaintiffs to earn top salaries in their chosen profession; and (4) prepare Plaintiffs to

10  obtain professional licensure.  (CAC, ¶ 99.)  However, Plaintiffs fail to set forth a single fact

11  regarding Defendants' intent to contract in making the alleged promises.  Notably, Plaintiffs do

12  not claim Defendants intended to integrate the purported promises into an existing contract with

13  Plaintiffs, Defendants engaged in a course of conduct such as to lead Plaintiffs to believe that a

14  contract existed, or Plaintiffs were aware of any conduct on the part of Defendants that would

15  give rise to an implied contract.  Indeed, the CAC does not allege Defendants made promises

16  regarding the second, third, and fourth matters, above, to Rosendahl.  In the absence of any

17  mutual intent to contract, or even any unilateral expectation of Plaintiffs that an implied contract

18  existed, Plaintiffs fail to state a claim for which relief can be granted.

19  **VIII.   PLAINTIFFS FAIL TO ALLEGE ANY CONTRACT UPON WHICH THEIR
            CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND**
20  **        FAIR DEALING CAN BE BASED**

21        Plaintiffs' cause of action for breach of the implied covenant of good faith and fair dealing

22  is also deficiently pled, as there is no contract on which the claim can be based.  To state a claim

23  for breach of an implied covenant of good faith and fair dealing, plaintiffs must allege the specific

24  contractual obligation from which the implied covenant of good faith and fair dealing arose.

25  *Inter-Mark-USA, Inc. v. Intuit, Inc.*, 2008 WL 552482, at *6 (N.D. Cal. Feb. 27, 2008); *Love v.*

26  *The Mail on Sunday*, 2006 WL 4046180, at *7 (C.D. Cal. Aug. 15, 2006) (dismissing breach of

27  implied covenant of good faith and fair dealing claim because plaintiff did not plead express

28  contractual terms from which the implied covenant arose; noting that "it is universally recognized

-18-

1   [that] the scope of conduct prohibited by the covenant of good faith and fair dealing is

2   circumscribed by the purposes and express terms of the contract.").

3          Plaintiffs concede there must be a valid contract between the parties for Defendants to owe

4   them a duty of good faith and fair dealing.  (CAC, ¶ 107 ("There is a covenant of good faith and

5   fair dealing implied in every contract.").)  However, Plaintiffs fail to allege any contract or

6   contractual provision from which the implied covenant of good faith and fair dealing arises and

7   instead merely claims that Defendants "breached the implied covenant of good faith and fair

8   dealing in their contracts with Plaintiffs . . ."  (CAC, ¶ 108.)  Plaintiff cannot simply cite to an

9   ephemeral contract as the basis for their claim—in the absence of an express contract, there can

10  be no claim for breach of the implied covenant of good faith and fair dealing.  Accordingly,

11  Plaintiffs' second cause of action fails as a matter of law.

12  **IX.   <u>CONCLUSION</u>**

13         For all of the foregoing reasons, Defendants respectfully request that the Court dismiss

14  with prejudice each and every cause of action in the Class Action Complaint.

15  Dated: March 15, 2011                      DLA PIPER LLP (US)

16

17                                             /s/ Christopher M. Young
                                               CHRISTOPHER M. YOUNG
18                                             NOAH A. KATSELL
                                               KAREN S. CHEN
19
                                               Attorneys for Defendants Bridgepoint
20                                             Education, Inc., Ashford University, and
                                               University of the Rockies
21

22

23

24

25

26

27

28