1   JOHNSON BOTTINI, LLP
    Francis A. Bottini, Jr. (175783)
2   Shawn E. Fields (255267)
    501 West Broadway, Suite 1720
3   San Diego, California 92101
    Telephone:  (619) 230-0063
4   Facsimile:  (619) 238-0622

5   *Counsel for Plaintiffs*

6

7

8                **UNITED STATES DISTRICT COURT**

9              **SOUTHERN DISTRICT OF CALIFORNIA**

10

11  SCOTT ROSENDAHL and              ) Case No. 11-cv-0061 WQH (WVG)
    VERONICA CLARK, on behalf of     )
12  themselves and all others similarly )
    situated,                        ) Class Action
13                                   )
                         Plaintiffs, )
14                                   ) **PLAINTIFFS' MEMORANDUM OF**
          vs.                        ) **POINTS AND AUTHORITIES IN**
15                                   ) **OPPOSITION TO DEFENDANTS'**
    BRIDGEPOINT EDUCATION, INC.,     ) **MOTION TO DISMISS CLASS**
16  ASHFORD UNIVERSITY, and          ) **ACTION COMPLAINT**
    UNIVERSITY OF THE ROCKIES,       )
17                                   )
                         Defendants. )
18  _____ Date:      April 18, 2011
                                         Time:      11:00 a.m.
19                                       Courtroom: 4
                                         Judge:     Honorable William Q. Hayes
20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................... 1

II.     STATEMENT OF FACTS ....................................................................... 2

        A.      Bridgepoint Receives Up To 90% Of Its Funding From The
                Federal Government .................................................................... 2

        B.      Bridgepoint Employs Nearly 6,000 "Enrollment Advisors" To
                Enroll New Students ................................................................... 2

        C.      Bridgepoint Induces Prospective Students To Enroll Through
                Uniform Deceptive Practices ...................................................... 3

        D.      Bridgepoint Targets Veterans For Its Deceptive Tactics ................... 5

        E.      Plaintiffs Suffered Injury As A Result Of Bridgepoint's Illegal
                Recruiting Practices .................................................................... 5

III.    STANDARD OF REVIEW ....................................................................... 6

IV.     ARGUMENT ........................................................................................... 7

        A.      Plaintiffs Have Standing Because They Suffered Injury In Fact ......... 7

                (1)     Plaintiffs Have Sufficiently Alleged Constitutional
                        Standing ......................................................................... 7

                (2)     Plaintiffs Have Sufficiently Alleged Statutory Standing ........... 8

        B.      Plaintiffs Have Alleged Their UCL And CLRA Claims With
                Sufficient Particularity ............................................................... 9

                (1)     Much Of Plaintiffs' UCL And CLRA Allegations Are
                        Not Subject To A Heightened Pleading Standard ................... 10

                (2)     Plaintiffs Adequately Allege Their Fraud-Based Claims
                        With Sufficient Particularity ............................................. 12

        C.      Plaintiffs State A Claim Under CLRA ......................................... 15

        D.      Plaintiffs States A Claim For Breach of Implied Contract And
                For Breach Of The Implied Covenant Of Good Faith And Fair
                Dealing .................................................................................. 16

        E.      If The Court Grants Defendants' Motion In Whole Or In Part,
                The Court Should Grant Leave To Amend ................................... 18

V.      CONCLUSION ..................................................................................... 19

-i-

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS CLASS ACTION COMPLAINT
No. 11-cv-0061 WQH (WVG)

1

# TABLE OF AUTHORITIES

2

**CASES**

3

*Arnold v. United Artists Theatre Circuit, Inc.,*
    158 F.R.D. 439 (N.D. Cal. 1994) ................................................................. 7

4

*Ashcroft v. Iqbal,*
    129 S. Ct. 1937 (2009) ................................................................................ 7

5

*Balistreri v. Pacifica Police Dep't,*
    901 F.2d 696 (9th Cir. 1988) ...................................................................... 7

6

7

*Beard v. Goodrich,*
    110 Cal. App. 4th 1031 (2003) ................................................................. 18

8

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) .................................................................................... 7

9

10

*Consumers Union of U.S., Inc. v. Alta-Dena Certified Diairy,*
    4 Cal. App. 4th 963 (1992) ...................................................................... 10

11

*Enrico v. Pac. Capital Bank, N.A.,*
    2010 WL 4699394 (N.D. Cal. Nov. 9, 2010) ........................................... 18

12

13

*Gillibeau v. City of Richmond,*
    417 F.2d 426 (9th Cir. 1969) .................................................................... 10

14

*Grisham v. Philip Morris U.S.A., Inc.,*
    40 Cal. 4th 623 (2007) .............................................................................. 15

15

16

*Hall v. City of Santa Barbara,*
     833 F.2d 1270 (9th Cir. 1986) .................................................................... 7

17

*Havens Realty Corp. v. Coleman,*
    455 U.S. 363 (1982) ................................................................................. 8, 9

18

19

*In re First Alliance Mortgage Co.,*
    471 F.3d 977 (9th Cir. 2006) .................................................................... 10

20

*In re Tobacco II Cases,*
    46 Cal. 4th 298 (2009) ........................................................................... 9, 10

21

22

*Kearns v. Ford Motor Co.,*
    567 F.3d 1120 (9th Cir. 2009) ............................................................... 7, 13

23

*Keilholtz v. Super. Fireplace Co.,*
    No. C 08-0836 CW,
    2009 U.S. Dist. LEXIS 30732 (N.D. Cal. 2009) ...................................... 11

24

25

26

27

28

*Lima v. Gateway, Inc.,*
  No. SACV 08-1366 DMG (MLGx),
  2010 WL 1816806 (C.D. Cal. Apr. 26, 2010) ............................................. 10

*Moore v. Kayport Package Express, Inc.,*
  885 F.2d 531 (9th Cir. 1989) ............................................. 13, 14, 15

*Moss v. U.S. Secret Serv.,*
  572 F.3d 962 (9th Cir. 2009) ............................................. 7

*Neubronner v. Milken,*
  6 F.3d 666 (9th Cir. 1993) ............................................. 13

*Palestini v. Homecomings Fin. LLC,*
  2010 WL 3339459 (S.D. Cal. Aug. 23, 2010) ............................................. 17

*Prata v. Super. Ct.,*
  91 Cal. App. 4th 1128 (2001) ............................................. 10

*Shin v. BMW of N. Am.,*
  2009 U.S. Dist. LEXIS 67994 (C.D. Cal. 2009) ............................................. 12

*Silva v. Providence Hosp. of Oakland,*
  14 Cal. 2d 762 (1939) ............................................. 18

*Steel Co. v. Citizens for a Better Env't,*
  523 U.S. 83 (1998) ............................................. 8

*Vasquez v. Super. Ct.,*
  4 Cal. 3d 800 (1971) ............................................. 15, 16

*Vess v. Ciba-Geigy Corp., U.S.A.,*
  317 F.3d 1097 (9th Cir. 2003) ............................................. 11, 12

*Wiliams v. Gerber Prods. Co.,*
  552 F.3d 934 (9th Cir. 2008) ............................................. 10

**STATUTES**

CAL. BUS. & PROF. CODE § 17203 ............................................. 9

CAL. BUS. & PROF. CODE § 17204 ............................................. 9

CAL. BUS. & PROF. CODE § 17535 ............................................. 9

CAL CIV. CODE § 1770 ............................................. 17

CAL. CIV. CODE § 1621 ............................................. 18

C. C. P. § 4310 ................................................................................................................ 17

**RULES**

FED. R. CIV. P. 12 .............................................................................................................. 7

Fed. R. Civ. P. 9 ........................................................................................................ 7, 13

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS CLASS ACTION COMPLAINT
No. 11-cv-0061 WQH (WVG)

# I.    INTRODUCTION

This action arises from the uniform illegal recruiting practices of Defendant Bridgepoint Education, Inc. ("Bridgepoint" or the "Company") and its subsidiaries, Ashford University ("Ashford") and University of the Rockies ("The Rockies") (collectively, "Defendants").  Tens of thousands of students have fallen victim to Bridgepoint's practices – they were induced to enroll at Ashford or The Rockies.

Plaintiffs Scott Rosendahl and Veronica Clark are among these victims.  Mr. Rosendahl attended Ashford, and Ms. Clark, The Rockies.  But they share a common story:  their respective Bridgepoint enrollment advisors promised them a quality education, at a reasonable price, along with improved employability and earnings potential.  But none of the promises materialized.  In fact, Plaintiffs ended up dropping out of their respective Bridgepoint programs with thousands of dollars of federal student loans to pay back.

Yet Bridgepoint profited from Plaintiffs' enrollment.  In the name of education, Bridgepoint used Plaintiffs and other students as ATM machines linked to the federal treasury, from which Bridgepoint withdrew hundreds of millions of dollars of student loan proceeds under Title IV of the Higher Education Act of 1965 ("Title IV").  In short, Bridgepoint got rich by tricking students and by defrauding the federal government.

On behalf of all Bridgepoint students, Plaintiffs bring this action to end Bridgepoint's illegal practices.  In response, Bridgepoint moves to dismiss Plaintiffs' well-pled Class Action Complaint (the "Complaint").  The Court should deny the motion because:

- • Plaintiffs have Constitutional as well as statutory standing to sue;
- • Plaintiffs have alleged fraud with particularity; and
- • Plaintiffs have stated all elements of their tort and contract claims.

-1-

## II.     STATEMENT OF FACTS

### A.     Bridgepoint Receives Up To 90% Of Its Funding From The Federal Government

Title IV allows postsecondary institutions, including for-profit companies like Bridgepoint, to receive up to 90% of its total funding from the federal government in the form of federal student loans and grants.  Bridgepoint exploits this rule to its maximum potential, deriving over 85% of its total funding from these sources. Bridgepoint is able to so efficiently exploit this rule by indexing its tuition almost exactly to the total amount of federal financial aid for which a student is eligible in any given academic year.

### B.     Bridgepoint Employs Nearly 6,000 "Enrollment Advisors" To Enroll New Students

Although 99% of Bridgepoint's classes are exclusively online, Bridgepoint operates and maintains five large office buildings throughout San Diego County. These offices are dedicated primarily to the nearly 6,000 "enrollment advisors" Bridgepoint employs to attract prospective students.  These advisors work largely as telemarketers in call centers throughout San Diego, calling dozens of prospective students per day from call lists obtained from inquiries on Bridgepoint's websites and third party vendors such as Monster Jobs.  These advisors have one stated goal: to enroll as many students as possible.

To incentivize enrollment advisors to achieve that goal, Bridgepoint ties salaries, raises, and bonuses directly to the numbers of students enrolled, in direct violation of federal law.  Bridgepoint's enrollment managers also routinely encourage enrollment advisors to push prospective students to enroll even if enrollment clearly is not the preferred or best option for the student, and even to mislead or lie to the prospective student about the true cost of attending one of Bridgepoint's schools, the quality of education, and the prospective student's financial aid options and repayment

obligations.  In the words of one Bridgepoint enrollment manager, "applications save your seat, enrollment gets you paid."  ¶ 9.[1]

### C.    Bridgepoint Induces Prospective Students To Enroll Through Uniform Deceptive Practices

The illegal incentive payments to enrollment advisors and encouragement to do anything to enroll students has created a culture at Bridgepoint of systematic and deliberate deception in order to enroll prospective students.  ¶ 88.  Bridgepoint makes these misrepresentations in one of two ways: through its schools' websites and through its enrollment advisors.

The websites Bridgepoint maintains for Ashford and The Rockies uniformly misrepresent the true cost of attendance, the quality of instruction, qualification for certain licensure, and post-graduation employability and salary potential.  These misrepresentations are made uniformly to every prospective and actual Bridgepoint student, including every member of the Class in this action, because each prospective and enrolled student is required to visit the website for enrollment information, to enroll for classes, and to attend online classes and complete coursework.  These websites contain both material omissions and affirmative misrepresentations.  Material omissions include failure to disclose actual tuition, fees and other costs associated with attendance; the schools' refund policies; the requirements and procedures for withdrawal from the institution; the schools' accreditation information; and the schools' graduation rate.  ¶ 50.  Federal law requires that this information be made readily available to prospective students before they enroll, but Bridgepoint only releases this information after a student enrolls at either Ashford or The Rockies.  *Id.*

Bridgepoint's websites also contain affirmative misrepresentations.  For example, Ashford's website claims that it "offers one of the lowest tuition costs

---

[1] The allegations in the Complaint are cited as "¶ ___."

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS CLASS ACTION COMPLAINT
No. 11-cv-0061 WQH (WVG)

available," without actually specifying the true cost of attendance.  ¶ 53.  In reality, Ashford's tuition rates are among the very highest in the country, and its fees make it one of the most expensive schools in the entire nation.  ¶ 54.  Ashford's website also fails to disclose a host of fees totaling approximately $14,000 over the course of a student's degree program.  ¶ 59.  The websites also misrepresent the quality and reputation of its academic programs, falsely stating that "your degree from Ashford University/University of the Rockies is equally valuable, accepted, and honorable as any equivalent degree you could earn from another accredited school or university." ¶ 62.  However, this statement is false and misleading, because a majority of employers and graduate schools will not even consider degrees from online universities like Ashford or The Rockies in determining whether potential employees meet minimum academic qualification standards.  ¶ 63.

Bridgepoint also employs deceptive tactics through its enrollment advisors. These advisors are trained to pressure prospective students to enroll before they have completed their financial aid applications, in violation of federal law.  ¶ 74.  These advisors are also encouraged to mislead students about how much of their degree program will be covered by federal financial assistance, even if the enrollment advisor knows that the student cannot pay the balance by himself.  ¶ 75.  These advisors are also encouraged to downplay a prospective student's federal repayment obligations, in an effort to secure enrollment for those uneasy about taking on thousands of dollars in student loan debt.  ¶ 76.  However, these advisors either fail to disclose or affirmatively misrepresent that an absolute obligation exists to repay federal student loans, which are not dischargeable in bankruptcy.  *Id.*  These deceptive tactics have resulted in thousands of students who cannot afford Bridgepoint's excessive tuition rates defaulting on federal student loans after realizing their degree could not assist

-4-

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS CLASS ACTION COMPLAINT
No. 11-cv-0061 WQH (WVG)

1  them in finding gainful employment.  As high as 17.4% of all former Bridgepoint

2  students have defaulted on their student loans.  ¶ 77.

3  **D.  Bridgepoint Targets Veterans For Its Deceptive Tactics**

4  Bridgepoint singularly targets veterans and active duty military personnel when

5  seeking to enroll prospective students, because these individuals receive grants from

6  the federal government to assist them in paying for their education.  ¶ 79.  These

7  assistance programs, such as the Post-9/11 GI Bill, allow veterans to attend

8  postsecondary institutions at a greatly reduced rate.  Bridgepoint has a particular

9  interest in receiving federal money through these assistance programs, because

10  although money from the Post-9/11 GI Bill comes from the federal government, it

11  does not count as federal money for purposes of Title IV's 90% funding limit.  ¶ 79.

12  Thus, as Iowa Senator Tom Harkin stated on December 9, 2010, this backdoor

13  channel created for for-profit universities to receive unlimited federal money "has

14  unintentionally subjected its new generation of veterans to the worst excesses of the

15  for-profit industry: manipulative, misleading marketing campaigns, educational

16  programs far more expensive than comparable non-profit programs, and a lack of

17  needed services." ¶ 80.

18  As a result, veterans who attended Bridgepoint are among the leaders of those

19  who default on federal student loans after leaving Bridgepoint.  ¶ 82.

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27

28

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS CLASS ACTION COMPLAINT
No. 11-cv-0061 WQH (WVG)

III.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).   A "motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." *Hall v. City of Santa Barbara*, 833 F.2d 1270, 1274 (9th Cir. 1986).   Dismissal is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

To sufficiently state a claim for relief and survive a Rule 12(b)(6) motion, a complaint "does not need detailed factual allegations," but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).   When considering a motion to dismiss, a court must accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).   "[F]or a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted).

For all allegations of fraud, Federal Rule of Civil Procedure 9(b) requires that "a party ... state with particularity the circumstances constituting fraud," while "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b).   "Rule 9(b) demands that the circumstances constituting the alleged fraud 'be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'   'Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged.'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quotations omitted).

## IV.    ARGUMENT

### A.    Plaintiffs Have Standing Because They Suffered Injury In Fact

#### (1)    Plaintiffs Have Sufficiently Alleged Constitutional Standing

To satisfy Constitutional standing, Plaintiffs need only show (1) injury in fact; (2) causation between their injury and Defendants' misconduct; and (3) redressability – a likelihood that monetary and injunctive relief will redress Plaintiffs' injury. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998).  Both Plaintiffs have done so here.   Mr. Rosendahl alleges that he "was induced to enroll in Ashford's undergraduate program in large part because his enrollment advisor misleadingly claimed that Ashford offered 'one of the cheapest undergraduate degree programs in the country.'"  ¶ 58.  As a result of this and other false and misleading statement, Mr. Rosendahl took out thousands of dollars in federal student loans to attend Ashford. *See* ¶ 22.  Thus, he has suffered injury.  Similarly, Ms. Clark was misled into enrolling at The Rockies when "her enrollment advisor told her on numerous occasions that the total cost of her Doctor of Psychology ('PsD') degree program would be $53,000."  ¶ 60.  Only after she had enrolled for nearly a year did she learn that she would have to pay a minimum of $75,000 to complete her program. *Id.*  She withdrew, and was told that she owed The Rockies over $23,000.  Thus, she too suffered injury in fact.

In addition to monetary damages, both Plaintiffs, like thousands of other class members, have been deprived of the information about the true quality of the education at Bridgepoint, as well as their post-graduation employment prospects and student loan payment obligations. *See* ¶ 3.  In all, Plaintiffs have satisfied the standing requirement under Article III of the United States Constitution by alleging a "distinct and palpable injury" as a result of the Defendant's misconduct. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372 (1982).  Thus, Plaintiffs have standing.

1    Arguing the contrary, Defendants choose to ignore the well-pled allegations in

2  the Complaint – that both Plaintiffs had been induced to take out federal student loans,

3  were deprived of truthful information, and expended time and money on classes that

4  were not what they were promised to be.  Defendants assert that Plaintiffs' injuries are

5  "hypothetical" on the basis that they did not complete their programs of study.

6  Defendants are wrong.  Defendants' assertion deals with the extent of Plaintiffs'

7  injury and not whether injury exists – which is the key to the Constitutional standing

8  analysis.  Put differently, Plaintiffs have standing to sue for Defendants' misconduct,

9  even though Plaintiffs have not suffered the full extent of the injury Defendants'

10  misconduct are capable of delivering.  Where, as here, plaintiffs show a "distinct and

11  palpable injury" caused by the conduct complained of, standing is established.

12  *Havens Realty Corp.*, 455 U.S. at 372.  Defendants' impermissibly narrow view of

13  "injury" must be rejected.

14    **(2)    Plaintiffs Have Sufficiently Alleged Statutory Standing**

15    Equally unavailing is Defendants' standing challenge based on California's

16  Proposition 64.  Under Proposition 64, only those who have themselves suffered

17  injury as a result of the allegedly unfair business practice may sue under the Unlawful

18  Competition Law ("UCL") and False Advertising Act.  CAL. BUS. & PROF. CODE §§

19  17203, 17204, 17535.  Both Mr. Rosendahl and Ms. Clark are in the group of eligible

20  plaintiffs here because, as demonstrated above, they are the victims of Defendants'

21  illegal recruiting practices.  *See* ¶¶ 22, 23, 53, 58, 60, 68-69.

22    Arguing the contrary, Defendants challenge Plaintiffs' standing on the basis that

23  they were not subjected to each and every one of Bridgepoint's wrongful business

24  practices.  *See* Defs.' Br. at 9-10. Defendants' argument, however, is not the law.  As

25  the California Supreme Court recently explained, Plaintiffs have standing as

26  "[r]epresentative parties who have a direct and substantial interest."  *In re Tobacco II*

27

28

1   *Cases*, 46 Cal. 4th 298, 319 (2009).  Indeed, Defendants' argument confuses standing

2   with Rule 23 issues involving Plaintiffs' typicality and adequacy as class

3   representatives.  *See id.* ("the question whether they may be allowed to present claims

4   on behalf of others who have similar, but not identical, interests depends not on

5   standing, but on an assessment of typicality and adequacy of representation").

6        Defendants are wrong on two fronts.  First, at the outset, the Court should not

7   consider Rule 23 issues at the pleading stage.  *Gillibeau v. City of Richmond*, 417 F.2d

8   426, 432 (9th Cir. 1969) ("compliance with Rule 23 is not to be tested by a motion to

9   dismiss").  Second, it is settled that "[t]he claims of the named plaintiffs need not be

10  identical to the claims of the class; they need only arise from the same remedial and

11  legal theories."  *Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 449

12  (N.D. Cal. 1994) (finding typicality in class representative even though individual

13  theaters discriminate against other disabled customers in different ways).  Thus, to

14  maintain a class action, class representatives need not have suffered identical injury

15  with those they represent.  A "common course of conduct" causing injury, rather than

16  the identity of injury, controls a Rule 23 analysis.  *See  In re First Alliance Mortgage*

17  *Co.*, 471 F.3d 977, 990 (9th Cir. 2006); *Prata v. Super. Ct.*, 91 Cal. App. 4th 1128,

18  1140 (2001) (rejecting defendant's argument that UCL class was not maintainable

19  because plaintiff saw only one of 19 allegedly false advertisements).  Accordingly,

20  Defendants' standing challenge must fail.

21       **B.   Plaintiffs Have Alleged Their UCL And CLRA Claims With Sufficient Particularity**

22

23       Plaintiffs have stated claims under the UCL and the Consumer Legal Remedies

24  Act ("CLRA").  "[T]he primary purpose of the [UCL] is to protect the public from

25  unscrupulous business practices."  *Consumers Union of U.S., Inc. v. Alta-Dena*

    *Certified Dairy*, 4 Cal. App. 4th 963, 975 (1992).  Because "a business practice is

26  deceptive will usually present a question of fact," dismissal of a UCL claim for failure

27

28

-9-

1   to state a claim is appropriate.  *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938-39

2   (9th Cir. 2008) (citing cases).

3       Yet Defendants contend that Plaintiffs' UCL and CLRA claims are entirely

4   "grounded in fraud" and thus are subject to Rule 9(b)'s heightened pleading standard.

5   Defs.' Br. at 10:21-22.  Defendants are wrong.  As discussed below, many of

6   Plaintiffs' UCL and CLRA allegations do not implicate fraudulent conduct at all, and

7   thus are only subject to the notice pleading requirements of Rule 8(a).  Moreover, to

8   the extent that Plaintiffs' UCL and CLRA claims are subject to Rule 9(b)'s pleading

9   requirements, Plaintiffs have adequately alleged these claims with sufficient

10  specificity to satisfy this requirement.

11      **(1)   Much Of Plaintiffs' UCL And CLRA Allegations Are Not Subject To A Heightened Pleading Standard**

12      "Fraud is not an essential element either of a CLRA or a UCL claim."  *Keilholtz*

13  *v. Super. Fireplace Co.*, No. C 08-0836 CW, 2009 U.S. Dist. LEXIS 30732, at *14

14  (N.D. Cal. 2009) (citing *Vess v. Ciba-Geigy Corp., U.S.A.*, 317 F.3d 1097, 1104-05

15  (9th Cir. 2003)).  "In a case where fraud is not an essential element of a claim, only

16  allegations ("averments") of fraudulent conduct must satisfy the heightened pleading

17  requirements of Rule 9(b)."  *Vess*, 317 F.3d at 1105.  In *Vess*, the Ninth Circuit

18  considered a set of facts similar to those here:  CLRA and UCL claims involved both

19  "some fraudulent and some non-fraudulent conduct."  *Id.* at 1104.  The court

20  explained, if plaintiffs refrain from pleading a unified course of fraudulent conduct,

21  they "may choose not to allege a unified course of fraudulent conduct . . . but to rather

22  allege some fraudulent and some non-fraudulent conduct.  In such cases, only the

23  allegations of fraud are subject to Rule 9(b)'s heightened pleading requirements."  *Id.*

24  ("To require that non-fraud allegations be stated with particularity merely because

25  they appear in a complaint alongside fraud averments . . . would impose a burden on

26  plaintiffs not contemplated by the notice pleading requirements of Rule 8(a).")

27

28

1       Like the plaintiff in *Vess*, Mr. Rosendahl and Ms. Clark allege some fraudulent

2  and some non-fraudulent conduct, but they do not allege a unified course of fraudulent

3  conduct.  For example, their UCL and CLRA claims allege significant non-fraudulent

4  conduct that in no way implicate fraud:

5        •    Defendants improperly required a "prospective student to provide
6             personal contact information in order to obtain, from the institution's
              website, educational program information that is required to be contained
7             in the school catalog or any information required pursuant to the
              consumer information requirements of Title IV," in violation both of
              Title IV and California Private Postsecondary Education Act of 2009
8             (the "Education Act of 2009"), § 94897(o) (¶¶ 3, 50, 116 (e));

9        •    Defendants improperly paid consideration "to a person to induce that
              person to sign an enrollment agreement for an educational program," in
10           violation of the Education Act of 2009, § 94897(c) (¶¶ 8, 88-89, 116(c));

11       •    Defendants improperly "compensate[d] an employee involved in
            recruitment, enrollment, admissions, student attendance, or sales of
12           educational materials . . . on the basis of a commission, commission
            draw, bonus, quota or other similar method," in violation of the
13           Education Act of 2009, § 94897(n) (¶¶ 8, 88-89, 116 (d)); and

14       •    Defendants improperly submitted applications for and enrolled
            prospective students who explicitly stated they did not wish to attend the
15           school (¶ 9).

16  Because none of these allegations "sound in fraud" or even implicate a particular

17  mental state, they are not subject to Rule 9(b)'s heightened pleading requirements.

18       These non-fraud allegations show that Defendants are wrong in asserting that

19  Plaintiffs' UCL and CLRA claims are entirely "premised upon" fraud.  (Defs.' Br. at

20  11:13).  Defendants' blanket assertion "ignores the distinction between claims that are

21  on the whole grounded in fraud and those in which only particular averments sound in

22  fraud."  *Shin v. BMW of N. Am.*, 2009 U.S. Dist. LEXIS 67994, at *10 (C.D. Cal.

23  2009) (finding that "[t]he factual allegations underlying Plaintiffs' UCL and CLRA

24  claims are not all based on fraud" despite the fact that some allegations do allege

25  fraudulent conduct).  Thus, at least as to significant portions of Plaintiffs' UCL and

26  CLRA claims, only Rule 8(a)'s notice pleading requirements apply.

27

28

### (2) Plaintiffs Adequately Allege Their Fraud-Based Claims With Sufficient Particularity

Plaintiffs' fraud and negligent misrepresentation claims are governed by Rule 9(b).  And portions of Plaintiffs' UCL and CLRA allegations also "sound in fraud" and are thus subject to Rule 9(b).  This rule requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake."  FED. R. CIV. P. 9(b). The Ninth Circuit has stated:

> Rule 9(b) demands that the circumstances constituting the alleged fraud "be 'specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'"  Averments of fraud must be accompanied by the 'who, what, when, where, and how' of the misconduct charged."  A party alleging fraud must "set forth more than the neutral facts necessary to identify the transaction."

*Kearns*, 567 F.3d at 1124.

At the outset, however, an exception exists for facts that are "peculiarly within the defendant's knowledge or are readily obtainable by him." *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993).  "'The general rule that allegations of fraud based on information and belief do not satisfy Rule 9(b) may be relaxed with respect to matters within the opposing party's knowledge.  In such situations, plaintiffs cannot be expected to have personal knowledge of the relevant facts." *Id.*  In *Moore v. Kayport Package Express, Inc.*, the Ninth Circuit explained:

> In cases of corporate fraud, plaintiffs will not have personal knowledge of all of the underlying facts.  "In such cases, the particularity requirement may be satisfied if the allegations are accompanied by a statement of the facts on which the belief is founded."

885 F.2d 531, 540 (9th Cir. 1989).

-12-

1

2

        **(i)**    **Plaintiffs Have Adequately Alleged The "Who, What, When, And Where" Regarding Defendants' Fraudulent Representations**

3          Here, Plaintiffs alleged sufficient facts to put Defendants on notice as to its

4 alleged wrongful conduct.  Plaintiffs alleged the "who, what, when and where" of the

5 misconduct charged.  Defs.' Br. at 12:17.  The "who" is simple because Plaintiffs

6 allege that Bridgepoint executives, acting from the Company's headquarters in San

7 Diego, caused all of the false and misleading statements to be made.  ¶¶ 3-4.

8 Moreover, Plaintiffs specifically allege facts demonstrating which false and

9 misleading statements are attributable to Ashford, and which are attributable to The

10 Rockies.  *See, e.g.,* ¶ 53 ("Ashford's website claims that the school represents 'higher

11 education made affordable . . . Ashford offers one of the lowest tuitions costs

12 available'"); ¶ 65 (alleging that The Rockies "school President Charlita Shelton, on

13 the home page of the school's website, misleadingly states that 'the University's goal

14 is to provide a professional graduate education in psychology to individuals who seek

15 licensure as psychologists.'").

16          The "what" are the specific false and misleading statements made on

17 Bridgepoint's websites and by Bridgepoint's enrollment advisors, as detailed and

18 specifically quoted throughout the Complaint.  ¶¶ 53, 58, 62, 65-66, 72, 76.

19          The "when" is specifically alleged, because Plaintiffs allege that Bridgepoint

20 enrollment advisors use a uniform misleading script when inducing prospective

21 students to enroll, thus indicating that these misrepresentations are made when a

22 prospective student is contacted by an enrollment advisor.  ¶¶ 88-92.  Moreover, the

23 misrepresentations on Bridgepoint's website are made to prospective students when a

24 prospective student visits the website.  ¶ 50.  While Plaintiffs have no way of knowing

25 precisely when Bridgepoint first adopted uniform misleading scripts or published

26 uniform misleading information on its websites, such specific information is not

27

28

1  required because it resides within the exclusive control of Defendants.  *See Moore*,

2  885 F.2d at 540 (Rule 9(b) may be relaxed with respect to matters within the opposing

3  party's knowledge.).  On information and belief, Plaintiffs alleged that Bridgepoint

4  has uniformly employed these misleading tactics throughout the Class Period.  *See* ¶

5  35.

6         Finally, the "where" is specifically alleged.  Bridgepoint's false and misleading

7  statements were communicated to Plaintiffs and the Class in two places: on

8  Bridgepoint's websites (¶ 50), and over the phone by Bridgepoint's enrollment

9  advisors (¶¶ 88-89).  These allegations are more than sufficient to satisfy Rule 9(b),

10  particularly considering that the rule is relaxed in this case because "in cases of

11  corporate fraud, plaintiffs will not have personal knowledge of all the underlying

12  facts."  *Moore*, 885 F.2d at 540.

13              **(ii)     Plaintiffs Sufficiently Plead Reliance On The**
                         **Fraudulent Representations**
14
15         In addition to adequately pleading facts pertaining to Bridgepoint's fraudulent

16  representations, Plaintiffs have also sufficiently pled reliance on these representations.

    *See, e.g.*, ¶¶ 58, 60, 141.  As an initial matter, Defendants' arguments concerning
17
    Plaintiffs' alleged failure to sufficiently "allege[] they relied on the purported
18
    misrepresentations" are misguided at the pleading stage.  Defs.' Br. at 13:20-21.
19
    Whether Plaintiffs can prove "reasonable reliance" is a question of fact for the jury
20
    and cannot be decided on a motion to dismiss unless "the facts permit reasonable
21
    minds to come to just one conclusion."  *Grisham v. Philip Morris U.S.A., Inc.*, 40 Cal.
22
    4th 623, 637-38 (2007).  Where false representations are made as to a material matter,
23
    an inference or presumption of reliance arises as to the entire class.  *Vasquez v. Super.*
24
    *Ct.*, 4 Cal. 3d 800, 814 (1971).
25
           Here, reliance is presumed because Plaintiffs allege the Defendants made
26
    material uniform misrepresentations concerning the objective features of its products
27

28

and services.  For example, Bridgepoint made uniform misrepresentations to all prospective students on its websites that Ashford and The Rockies provided "some of the lowest cost tuition costs available," (¶ 53), that students would receive a high quality of education (*id.*), that The Rockies' was accredited with the American Psychological Association (¶ 65), that a degree from The Rockies would qualify students to obtain professional psychology licenses (*id.*), and that a degree from Ashford or The Rockies would be identical to a degree from other postsecondary institutions (¶ 62).  Moreover, through enrollment advisors' uniformly misleading scripted materials, all prospective students who spoke with a Bridgepoint enrollment advisors heard identical misleading information regarding all of the foregoing, and additionally hearing identical misleading information regarding students' federal financial aid options, obligations to repay federal student loans, and inability to discharge these loans in bankruptcy.    ¶¶ 88-92.    Because each of the misrepresentations was communicated uniformly through Defendants' websites and through uniform scripted sales pitches given by Bridgepoint's enrollment advisors, reliance is presumed as a matter of law.  *Vasquez*, 4 Cal. 3d at 814.

### C.    Plaintiffs State A Claim Under The CLRA

Ignoring the clear language in the Complaint, Defendants argue for dismissal of the CLRA claim for "fail[ure] to identify the particular section of the CLRA [they] allegedly violated." Defs.' Br. at 17.  Contrary to this argument, paragraph 128 of the Complaint specifically states that "Defendants violated the [CLRA] by misrepresenting to Plaintiffs and members of the Class the true cost of attendance at Ashford and The Rockies, by misrepresenting:  the quality of academic instruction at these schools, students' post-graduation employability, job placement prospects, and qualification for professional licensure, and prospective students' federal financial

1  assistance options."  ¶ 128.  These violations are covered under Cal. Civ. Code §

2  1770(a)(5), (7), (9).  Thus, Plaintiffs have stated a CLRA claim.

3       Defendants' reliance on *Palestini v. Homecomings Financial*, LLC, 2010 WL

4  3339459 (S.D. Cal. Aug. 23, 2010), is misplaced.  The CLRA allegations in the

5  *Palestini* complaint suffers from "multiple defects which require dismissal."  *Id.* at

6  *11.  In any event, *Palestini* cites no authority for dismissing the CLRA claim based

7  on failure to specify the CLRA provision implicated by the violation.  Absent legal

8  support, Defendants' argument for the dismissal of the CLRA claim must fail.

9       **D.**    **Plaintiffs State A Claim For Breach of Implied Contract And For**
**Breach Of The Implied Covenant Of Good Faith And Fair**

10         **Dealing**

11      Under California law, a claim for breach of contract requires a pleading of:  (1)

12 the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's

13 breach; and (4) damage to plaintiff.  It is necessary to specify that the contract is

14 written, oral, or implied by conduct.  C.C.P. 430.10(g).

15      Plaintiffs have satisfied each element of this claim for pleading purposes.

16 Plaintiffs have adequately alleged that they entered into implied in fact contracts with

17 Bridgepoint when Bridgepoint promised to provide a high quality education at "one of

18 the lowest tuition costs available" in exchange for Plaintiffs' agreement to enroll and

19 pay tuition.  ¶¶ 53, 99.  Plaintiffs adequately alleged that they performed their part of

20 the contract by enrolling and paying tuition.  ¶¶ 100-01.  Plaintiffs adequately alleged

21 that Bridgepoint breached its contract when it failed to provide even a bare minimum

22 quality education, and when it charged Plaintiffs among the highest tuition rates in the

23 country.  ¶¶ 57-59, 102-03.  Plaintiffs adequately alleged that they were damaged by

24 this breach.  ¶¶ 14, 104.  No more is required under California law.

25      Defendants are wrong to assert that Plaintiffs have not adequately pled a breach

26 of implied contract claim.  An implied contract "consists of obligations arising from a

27

28

1    mutual agreement and intent to promise where the agreement and promise have not

2    been expressed in words." *Silva v. Providence Hosp. of Oakland*, 14 Cal. 2d 762, 773

3    (1939); CAL. CIV. CODE § 1621.  An implied contract "is no less an express contract,

4    [and] . . . the very heart of this kind of agreement is an intent to promise." *Enrico v.*

5    *Pac. Capital Bank, N.A.*, 2010 WL 4699394, at *10 (N.D. Cal. Nov. 9, 2010).  In

6    California, a party's intent to promise is judged objectively by the party's outward

7    manifestation of consent. The test is what the outward manifestations of consent

8    would lead a reasonable person to believe. *Beard v. Goodrich*, 110 Cal. App. 4th

9    1031, 1038 (2003).

10        Here, Bridgepoint made repeated and uniform outward manifestations that

11   would lead a reasonable person to believe that it intended to promise to deliver certain

12   things to its students.  Bridgepoint clearly and unequivocally states on its schools'

13   websites that it will offer students "one of the lowest tuition costs available." ¶ 53.

14   Bridgepoint unequivocally states on its schools' websites that it will provide degrees

15   that are "equally valuable, accepted, and honorable as any equivalent degree you

16   could earn from another accredited school or university." ¶ 62.  These are objective,

17   unequivocal statements regarding the product Bridgepoint promises to deliver to

18   prospective students.  Plaintiffs relied on these promises when they agreed to enroll at

19   Bridgepoint's institutions, Bridgepoint breached this implied contract when it failed to

20   deliver on these promises, and Plaintiffs were damaged as a result.  ¶¶ 99-104.

21   Nothing more is required to plead a claim for breach of implied contract.

22        With respect to Plaintiffs' breach of the implied covenant of good faith and fair

23   dealing claim, Defendants again are wrong in claiming "there is no contract on which

24   the claim can be based."  Defs.' Br. at 18:22.  As demonstrated above, Plaintiffs

25   adequately alleged facts demonstrating that a contract existed between Plaintiffs and

26   Bridgepoint, that Bridgepoint breached that contract, and that Plaintiffs were

27

28

-17-

damaged.  Moreover, while Plaintiffs were not in possession of their express written enrollment agreements with Bridgepoint at the time they filed their Complaint, they now possess these express contracts and can easily reference them in an amended complaint, thus rectifying any perceived deficiencies with Plaintiffs' breach of contract claims.

### E.    If The Court Grants Defendants' Motion In Whole Or In Part, The Court Should Grant Leave To Amend

Plaintiffs submit that their Complaint is well pled and withstands Defendants' Rule 12(b)(6) challenges.  In the event that the Court grants Defendants' motion, however, Plaintiffs respectfully request leave to amend.

Plaintiffs' amendment will aim at curing whatever pleading defects the Court identifies.  Plaintiffs will also incorporate certain findings of Ashford's wrongdoing identified in the Final Audit Report of Ashford University ("Final Audit Report") issued by the Office of the Inspector General of the U.S. Department of Education on January 21, 2011, just ten days after the Complaint was filed.  In the Final Audit Report, the Office of Inspector General made numerous detailed findings that Ashford violated key requirements of Title IV, including, as Plaintiffs have alleged, paying enrollment advisors based on the number of students they enroll.  *See* Final Audit Report at 7–44 (attached as Exhibit A to Plaintiffs' Request for Judicial Notice in Support of Opposition to Motion to Dismiss).

///

///

///

///

///

///

///

-18-

**V.   CONCLUSION**

For the reasons set forth above, the Court should deny Defendants' motion to dismiss the Class Action Complaint (Dkt. No. 10) in its entirety.

Should the Court grant Defendants' motion to dismiss in whole or in part, Plaintiffs respectfully request leave to amend.

Dated:  April 4, 2011

Respectfully submitted,

JOHNSON BOTTINI, LLP
Francis A. Bottini, Jr. (175783)
Shawn E. Fields (255267)

s/ Francis A. Bottini, Jr.
Francis A. Bottini, Jr.

501 West Broadway, Suite 1720
San Diego, California 92101
Telephone:  (619) 230-0063
Facsimile:   (619) 238-0622

*Counsel for Plaintiffs*