Christopher M. Young (Bar No. 163319)
christopher.young@dlapiper.com
Noah A. Katsell (Bar No. 217090)
noah.katsell@dlapiper.com
Karen S. Chen (Bar No. 241038)
karen.chen@dlapiper.com
**DLA PIPER LLP (US)**
401 "B" Street, Suite 1700
San Diego, CA 92101
Telephone: (619) 699-2700
Facsimile: (619) 699-2701

Attorneys for Defendants BRIDGEPOINT EDUCATION, INC., ASHFORD UNIVERSITY, and UNIVERSITY OF THE ROCKIES

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT ROSENDAHL and VERONICA CLARK, on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BRIDGEPOINT EDUCATION, INC., ASHFORD UNIVERSITY, and UNIVERSITY OF THE ROCKIES,<br><br>Defendants. | CV NO. 11CV61 WQH (WVG)<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS BRIDGEPOINT EDUCATION, INC., ASHFORD UNIVERSITY, AND UNIVERSITY OF THE ROCKIES TO DISMISS CLASS ACTION COMPLAINT**<br><br>Date:  April 18, 2011<br>Time:  11:00 a.m.<br>Judge:  Honorable William Q. Hayes<br>Ctrm.:  4<br><br>**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT** |

## I. INTRODUCTION

Instead of addressing the pleading deficiencies in the Class Action Complaint ("CAC") head-on, Plaintiffs cite in opposition to a litany of inapplicable case law to hide the fact that the CAC fails to state any viable claim against Defendants Bridgepoint Education, Inc. ("Bridgepoint"), Ashford University ("Ashford"), and University of the Rockies ("The Rockies") (collectively, "Defendants").

As a threshold matter, Plaintiffs do not have standing to sue Defendants. Plaintiffs did not hear, see, or read alleged misrepresentations made by Defendants regarding post-graduation job prospects, earnings potential, or loan repayment obligations. Furthermore, Plaintiff Scott Rosendahl ("Rosendahl") is not alleged to have been exposed to any statements regarding the quality of academic instruction, the utility and value of his Ashford education, or qualification for professional licensure. Accordingly, Plaintiffs could not have relied on or been injured by any such statements and lack standing to sue based on these statements.

Furthermore, as Plaintiffs' Opposition concedes, the CAC is premised on a uniform course of allegedly fraudulent conduct. Accordingly, Plaintiffs' UCL, FAL, CLRA, negligent misrepresentation, and fraud claims must be pled with particularity under Federal Rule of Civil Procedure 9(b). Plaintiffs, however, fail to state the "who, what, when, and where" of the statements allegedly made to them, and therefore fail to establish reliance on or injury as a result of these statements. Plaintiffs' fraud-based claims should be dismissed.

Finally, even assuming, as Plaintiffs claim for the first time in their Opposition, that their enrollment agreements with Ashford and The Rockies provide the basis for their contract-related claims, Plaintiffs still fail to specify the particular provisions of the contract breached by Defendants. As such, both their breach of implied contract and breach of implied covenant of good faith and fair dealing claims fail as a matter of law.

For the above reasons, and those set forth in Defendants' opening brief, Defendants respectfully request that the Court dismiss the CAC with prejudice.

## II. PLAINTIFFS HAVE NOT PLED RELIANCE OR INJURY RESULTING FROM DEFENDANTS' STATEMENTS AND THEREFORE LACK STANDING TO SUE DEFENDANTS

It is undisputed that the CAC fails to allege: (1) that Plaintiffs were exposed to each of the alleged misrepresentations, or (2) injury as a result of those misrepresentations. Plaintiffs nevertheless assert claims against Defendants premised on these alleged misrepresentations, which they cannot do.

### A. Plaintiffs Do Not Allege Exposure to or Reliance On Many of the Alleged Misrepresentations.

To have standing under Article III of the Constitution, the UCL, FAL, or CLRA, a plaintiff must plead that he was exposed to and relied on the alleged misrepresentations. *Californians for Disability Rights v. Mervyn's LLC*, 39 Cal. 4th 223, 228 (2006); *Daghlian v. DeVry University, Inc.*, 461 F.Supp.2d 1121, 1156 (C.D. Cal. 2006); *see Steel Co. v. Citizens For a Better Env't*, 523 U.S. 83, 103 (1998); (Opp., p. 5.) It is not enough for a plaintiff to generally claim exposure and reliance; he must set forth exposure to and reliance on the particular challenged statements. *In re Tobacco II Cases*, 46 Cal. 4th 298, 326-28 (2009). In the absence of any exposure to the purported misrepresentations, there can be no causal nexus between the misrepresentation and the claimed injury.

Plaintiffs ignore the reliance requirement for establishing standing under the U.S. Constitution and Proposition 64. As set forth in Defendants' opening brief, the CAC does not allege exposure to each misrepresentation upon which Plaintiffs base their claims. (Motion, p. 8.) Plaintiffs do not claim that Rosendahl was provided information, let alone false information, about the quality of academic instruction, post-graduation job prospects, cost of attendance, earnings potential, utility and value of education, loan repayment obligations, or professional licensure. (*See* Opp., p. 7 ("Rosendahl alleges that . . . his enrollment advisor misleadingly claimed that Ashford offered 'one of the cheapest undergraduate degree programs in the country.'").) Nor do Plaintiffs claim that Clark was exposed to any representations regarding post-graduation job prospects, earnings potential, utility and value of education, or loan repayment obligations. (*Id.* (Clark's "enrollment advisor told her on numerous occasions that the total cost of her Doctor of Psychology . . . degree program would be $53,000.").) If Plaintiffs were not exposed to statements regarding post-graduation job prospects, earnings potential, or loan repayment obligations, they could not have relied upon these representations, and do not

have standing to sue Defendants for these alleged misrepresentations.

Plaintiffs instead claim, in an apparent admission that the CAC fails to plead exposure to each of Bridgepoint's alleged marketing tactics, that they *need not* allege exposure to each and every misrepresentation or wrongful business practice. (Opp., p. 8.) Plaintiffs are partly correct—they have not alleged exposure to every alleged misrepresentation or wrongful act—but their contention that they are not required to do so is simply wrong. (*See* Motion, pp. 6-7.) Plaintiffs would have the Court believe that *In re Tobacco II Cases* stands for the proposition that their failure to allege exposure to the representations and actions on which they base their claims and injuries is a question of typicality and adequacy of Plaintiffs as class representatives, rather than an issue of standing. (Opp., pp. 8-9.) Plaintiffs, however, misconstrue the law. *In re Tobacco II Cases* provides that the threshold question is "whether the named plaintiffs have standing under Article III to assert their individual claims. If that initial test is met, the court must then scrutinize the putative class and its representatives to determine whether the relationship between them is such that under the requirements of Rule 23 the named plaintiffs may represent the class." 46 Cal. 4th at 319. It is only *after* Plaintiffs demonstrate standing to sue Defendants that the questions of typicality and adequacy are considered. *Id*. Plaintiffs concede, as they must, that they have not alleged exposure to Defendants' alleged misleading marketing tactics (Opp., p. 7), rendering class issues of typicality and adequacy irrelevant at the present time[1] and stripping Plaintiffs of standing to sue Defendants.

### B. Plaintiffs Do Not Allege Injury, Nor Do They Allege They Were Injured as a Result of Defendants' Alleged Misrepresentations and Actions.

To have Constitutional and statutory standing to sue Defendants, Plaintiffs must also allege that they suffered concrete injury, and the existence of a causal nexus between that injury and Defendants' alleged misrepresentations or actions. *Steel Co. v. Citizens For a Better Env't*, 523 U.S. at 103; *Laster v. T-Mobile USA, Inc.*, 407 F.Supp. 2d 1181, 1194 (S.D. Cal. 2005). Plaintiffs allege neither, and so lack standing to sue Defendants.

---

[1] Defendants disagree with Plaintiffs' typicality and adequacy arguments in pages 8-9 of the Opposition, but do not address those arguments at this time. Defendants feel that it is more appropriate to address these issues after full and complete discovery of class issues, and upon a motion for class certification. Defendants therefore reserve their right to address these issues at a later time.

1   First, neither Rosendahl nor Clark has pled a concrete injury.  Rosendahl and Clark do not claim that: (1) they did not receive the education they paid for, or (2) they were unable to repay federal student loans.  Instead, and for the first time in their opposition brief, they claim they each took out thousands of dollars in federal student loans to attend the universities and received alleged misrepresentations regarding post-graduation employment prospects or loan repayment obligations.  The CAC, however, does not allege any of these events with respect to Rosendahl or Clark, and such pleading deficiencies cannot be remedied by way of the Opposition.  *Schneider v. California Dept. of Corrections*, 151 F.3d 1194, 1197 fn. 1 (9th Cir. 1998).

Even if these allegations had been included in the CAC, which they were not, such allegations would still fail to establish injury in fact.  The mere expenditure of money is insufficient to demonstrate injury—both Rosendahl and Clark received quality educations in exchange for the monies they paid.  *See Birdsong v. Apple, Inc.*, 590 F.3d 955, 961 (9th Cir. 2009).  Similarly, being deprived of certain information does not, without more, equate to a palpable injury; Plaintiffs have, at best, alluded to a hypothetical, future injury.  This does not provide Plaintiffs with standing to sue Defendants.

Second, Plaintiffs have pled no causal relationship between the purported injury, if any, and Defendants' alleged statements.  As set forth above and in Defendants' opening brief, Plaintiffs have not alleged exposure to any statements regarding post-graduation employment prospects, earnings potential, utility and value of their education, and loan repayment obligations.  Plaintiffs, therefore, cannot claim injury resulting from these alleged misrepresentations—it is a logical impossibility for Plaintiffs to have been damaged by statements that they never heard, saw, or read.

### III. THE CAC IS PREMISED ON AN ALLEGED UNIFIED COURSE OF FRAUDULENT CONDUCT AND THE UCL, FAL, CLRA, AND NEGLIGENT MISREPRESENTATION, AND FRAUD CLAIMS MUST THEREFORE BE PLED WITH PARTICULARITY

In an attempt to escape the heightened pleading requirements of Rule 9(b), Plaintiffs contend that much of their UCL, FAL, CLRA, and negligent misrepresentation claims are not grounded in fraud and so need not meet the particularity requirements of Rule 9(b).  Plaintiffs' contention, however, is unsupported by the facts and law.  The CAC is premised on an alleged

unified course of fraudulent conduct, and these claims must therefore be pled with specificity.

### A. The CAC Is Premised On a Unified Course of Allegedly Fraudulent Conduct.

As set forth in Defendants' opening brief at pages 11-12, the CAC alleges a unified course of purportedly fraudulent conduct, whereby Defendants allegedly made misrepresentations and engaged in wrongful conduct to induce Plaintiffs and other potential students to enroll at Ashford and The Rockies and obtain the maximum amount of federal financial aid, resulting in millions of dollars of profits for Defendants. (CAC, ¶¶ 8, 11, 15, 16, 18, 19, 49, 73, 74, 76, 94.) The Opposition concedes this point, claiming that "Bridgepoint got rich quick by tricking students and defrauding the federal government." (Opp., p. 1.)

Indeed, the "non-fraudulent conduct" set forth by Plaintiffs, if presumed to be true, implicates intent to induce reliance, which is a hallmark of a fraud claim. *Ferrington v. McAfee*, 2010 WL 3910169, at *5 (N.D. Cal. Oct. 5, 2010); *In re Fortune Systems Sec. Litig.*, 1987 WL 34632, at *3 (N.D. Cal. July 30, 1987). In particular, Defendants would direct the attention of the Court to the following allegations:

- <u>Defendants' allegedly improper requirement to have prospective students provide contact information to obtain educational program information</u>: Paragraph 3 of the CAC alleges that Bridgepoint "engaged in a pattern of *improper, fraudulent, and illegal behavior* in an effort to *recruit students* and over-charge the federal government for financial aid . . ." (emphasis added.) Paragraphs 49 and 50 allege that Bridgepoint "*improperly hid[] information* (regarding educational program information) from prospective students . . . *to sign up as many students as possible* . . . in order to maximize Bridgepoint's profits . . ." (emphasis added.)

- <u>Defendants' alleged improper compensation of enrollment advisors</u>: Paragraph 8 of the CAC alleges that "*[t]his singular objective* (of enrolling as many students as possible) is demonstrated through Bridgepoint's *improper and unlawful practice* of setting enrollment quotas for its enrollment advisors . . . [t]he *sole concern* of management throughout this process *is . . . maximizing Bridgepoint's profits*." (emphasis added.) Paragraph 88 alleges "Bridgepoint provides . . . incentive payments to enrollment advisors . . . [T]he result is that enrollment advisors *give false and misleading information to get students to enrol*l . . ." Paragraph 89 alleges "[t]his type of hyper competitive environment not only fosters a culture in which misrepresentatives are encouraged in order to drive up enrollment numbers, but also flatly violates federal law." (emphasis added.)

- **Defendants' alleged improper submission of applications for prospective students who stated they did not wish to attend the university**: Paragraphs 7-9 of the CAC allege this was done in furtherance of Bridgepoint's *systematic practice* to "recruit and *enroll as many students as possible*" in order to "increas[e] enrollment numbers and thereby *maximiz[e] Bridgepoint's profits*." (emphasis added.)

Allegations such as these which assert a plan, scheme, or systematic pattern of behavior to induce reliance demonstrate that Plaintiffs' UCL, FAL, CLRA, and negligent misrepresentation claims sound in fraud are subject to the heightened pleading requirements of Rule 9(b).

### B. Plaintiffs Fail to Plead the "Who, What, When, and Where" of the Allegedly Fraudulent Statements Made to Them.

Plaintiffs attempt to sidestep the pleading requirements of Rule 9(b) by first claiming they need not comply with Rule 9(b) because the facts regarding the "who, what, when, and where" of the alleged misrepresentations are solely within Defendants' knowledge and control. (Opp., p. 12.) Then, in an about-face, Plaintiffs assert that they *have* adequately alleged the "who, what, when, and where" of the purported misrepresentations. Plaintiffs are wrong on both counts—they are required to comply with Rule 9(b), but do not.

Plaintiffs do not qualify for the exception to Rule 9(b) pleading requirements set forth in *Neubronner v. Milken* and *Moore v. Kayport*. 6 F.3d 666, 672 (9th Cir. 1993); 885 F.2d 531, 540 (9th Cir. 1989). Rule 9(b) pleading requirements are relaxed only for matters "*peculiarly* within defendant's knowledge[.]" *Neubronner*, 6 F.3d at 672 (emphasis added). The exception applies to situations where the facts surrounding the fraud are *solely* within defendants' control; it does not apply to situations where plaintiff had access to the information. *Lee v. U.S. Bank*, 2010 WL 2635777, at *10 (N.D. Cal. June 30, 2010).

Here, both Rosendahl and Clark claim they enrolled at the universities after speaking with enrollment advisors. (CAC, ¶¶ 22, 23.) They also claim that they, themselves, directly received and were exposed to the alleged misrepresentations. (CAC, ¶¶ 58, 60, 68-69.) Accordingly, the facts and circumstances surrounding the alleged fraud are not solely within Defendants' knowledge and control. Plaintiffs cannot, therefore, feign ignorance as to the relevant facts and must meet the heightened pleading requirements of Rule 9(b).

Unable to point to any allegations in the CAC setting forth the who, when, and where of the statements allegedly made to them, Plaintiffs resort to claiming that they have met the pleading requirements of Rule 9(b) simply because they have pled the facts and circumstances of allegedly fraudulent statements made to prospective students in general:

- "The 'who' is simple because Plaintiffs allege that Bridgepoint executives . . . caused all of the false and misleading statements to be made." (Opp., p. 13.)

- "The 'what' are the specific false and misleading statements made on Bridgepoint's websites and by Bridgepoint's enrollment advisors." (Opp., p. 13.)

- "The 'when' is specifically alleged, because Plaintiffs . . . indicat[e] that these misrepresentations are made when *a prospective student* is contacted by an enrollment advisor." (Opp., p. 13 (emphasis added).)

- "[T]he 'where' is specifically alleged [because] Bridgepoint's false and misleading statements were communicated to Plaintiffs *and the Class* . . . on Bridgepoint's websites, and over the phone by Bridgepoint's enrollment advisors.") (Opp., p. 14 (emphasis added, internal citations omitted).)

Plaintiffs, however, misconstrue the pleading requirements of Rule 9(b). Rule 9(b) requires Plaintiffs to plead the facts and circumstances of the allegedly fraudulent statements made to *them*, not the who, what, when, and where of the statements made to unnamed persons or absent class members. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125-26 (9th Cir. 2009) (finding plaintiff failed to meet Rule 9(b)'s particularity requirements because he did not specify the substance of the misrepresentations, when he was exposed to them, which materials he relied on, and who made the misrepresentations to him); *Miscellaneous Serv. Works, Drivers, & Helpers, Teamsters Local No. 427 v. Philco-Ford Corp., WDL Div.*, 661 F.2d 776, 782 (9th Cir. 1981) (dismissing fraud claim because plaintiffs did not allege the "manner, content or medium" of the alleged misrepresentations made to them). Plaintiffs' failure to allege the who, what, when, and where of the statements made to them warrants dismissal of their UCL, FAL, CLRA, negligent misrepresentation, and fraud claims.

### C. Plaintiffs Have Not Pled Reliance On Many of the Allegedly False Representations.

Plaintiffs are also unable to plead another fundamental requirement of fraud-based claims—reliance on the allegedly false statements. Recognizing that they cannot plead reliance because they were never exposed to many of the alleged misrepresentations, Plaintiffs again misconstrue the law and attempt to apply a presumption of reliance to their claims where the law does not provide for such presumption.

First, Plaintiffs erroneously frame the issue as a question of reasonableness of reliance. (Opp., p. 14.) This is not the inquiry before the Court. The issue is not whether, from a factual standpoint, Plaintiffs' reliance was reasonable, but rather whether Plaintiffs have pled reliance at all, which they have not. The latter is, without question, an appropriate issue for the Court to consider on a motion to dismiss. *Vashistha v. Allstate Ins. Co.*, 989 F.Supp. 1029, 1032 (C.D. Cal. 1997).

Second, Plaintiffs claim that, because the representations related to a material matter, a presumption of reliance arises as to the entire class. *Vasquez v. Superior Court*, 4 Cal. 3d 800, 814 (1971); (Opp., p. 14.) *Vasquez* does not provide that reliance may be presumed for the named plaintiffs, as this would essentially obviate Constitutional and statutory standing requirements. *Vasquez* simply provides that, in certain, limited situations, reliance can be presumed for absent class members. Furthermore, the Ninth Circuit has limited this presumption of reliance to securities fraud cases involving omission of statements as opposed to affirmative misrepresentations. *Gonzalez v. Proctor and Gamble Co.*, 247 F.R.D. 616, 623 (S.D. Cal. 2007). Therefore, Plaintiffs are not excused from pleading reliance and their failure to do so causes their fraud-based claims to fail as a matter of law.[2]

**D.   Plaintiffs Do Not Claim They Were Injured As a Result of Defendants' Statements or Actions.**

Finally, Plaintiffs do not claim they were injured as result of Defendants' statements or actions. They do not dispute that the CAC fails to plead a causal relationship between their alleged injury and Defendants' (1) purported concealment on its websites of information

---

[2] As set forth in the opening brief at pages 14-15, Plaintiffs have not pled exposure to (and therefore cannot claim reliance on) statements regarding: (1) post-graduation employment prospects, (2) earnings potential, or (3) utility and value of students' education at the universities. Plaintiffs do not contest this failure in their Opposition.

regarding cost and attendance of the universities (or that they even attempted to obtain such information from the websites); (2) improper compensation of its enrollment advisors (or that they were even aware of Defendants' compensation policies); (3) improper application for the maximum amount of federal financial aid (or that they even applied for or received federal financial aid); or (4) targeting of active military and military veterans with deceptive tactics (or that they, themselves, were targeted based on their military status). Plaintiffs' silence on these matters should be deemed a binding concession. *PageMasters, Inc, v. Autodesk, Inc.*, No. CV-08-00553, 2009 WL 825810, at *10 (D. Ariz. Mar. 30, 2009).

### IV.  PLAINTIFFS HAVE NOT STATED A VALID CLAIM FOR VIOLATION OF THE CLRA

Plaintiffs do not dispute that the CAC fails to state the particular section of the CLRA Defendants allegedly violated. (Opp., pp. 15-16.) Instead, Plaintiffs attempt to correct this deficiency by listing, for the first time, the CLRA sections allegedly violated. (Opp., p. 16.) However, Plaintiffs cannot remedy pleading deficiencies in the CAC by way of their Opposition. *Schneider v. California Dept. of Corrections*, 151 F.3d 1194, 1197 fn. 1 (9th Cir. 1998). Because the CAC fails to specify the section of the CLRA allegedly violated, the Court should dismiss this claim. *Palestini v. Homecomings Financial, LLC*, 2010 WL 3339459 (S.D. Cal. Aug. 23, 2010).

### V.  PLAINTIFFS' CONTRACT-RELATED CLAIMS FAIL AS A MATTER OF LAW

Plaintiffs' breach of implied contract and breach of the implied covenant of good faith and fair dealing claims fail because the CAC fails to specify any contract on which these claims are based. Furthermore, the CAC fails to allege any intent on the part of Defendants to create an implied contract by their statements.

#### A.  The CAC Does Not Allege Mutual Intent to Contract, and Plaintiffs' Breach of Implied Contract Claim Therefore Fails.

In determining if there is an implied contract between the parties, courts may look to the conduct of the parties. *See Sweet v. Bridge Base, Inc.*, 2009 WL 1514443, at *4 (E.D. Cal. May 28, 2009) (finding the behavior of the parties did not support an inference that a contract to pay plaintiff for an indefinite period of time existed). For there to be an implied contract, there must be an intent on the part of *both parties* to enter into an agreement—the unilateral expectation or subjective intent of one party will not suffice to create an implied contract. *Id.*; *see also Division*

*of Labor Law Enforcement v. Transpacific Transportation Co.*, 69 Cal. App. 3d 268, 275 (1977).

Here, the CAC has not alleged mutuality of intent to create an implied contract. As set forth in the opening brief, Rosendahl's implied contract claim cannot be based on statements not made to him, as he could not have believed there to be a contract based on promises he never received. (Motion, p. 18.) Furthermore, the CAC does not allege that either Rosendahl or Clark believed that an implied contract was created from any of Defendants' statements—in other words, there was no meeting of the minds. For these reasons, Plaintiffs' breach of implied contract claim fails to state a claim as a matter of law.

### B. The CAC Does Not Allege Any Contract or Provision Upon Which Plaintiffs' Breach of Implied Covenant of Good Faith and Fair Dealing Claim Can be Based.

Plaintiffs admit that the CAC fails to identify the contract forming the basis of their claim for breach of implied covenant of good faith and fair dealing, and seek to amend the CAC to include reference to student enrollment agreements. (Opp., p. 18.) However, even if the CAC had pled the enrollment agreement as the contract at issue, Plaintiffs still have no claim against Defendants for breach of the implied covenant, as it is insufficient to simply allege the existence of a contract—Plaintiffs must also set forth the specific contractual provision purportedly breached by Defendants. *Love v. The Mail on Sunday*, 2006 WL 4046180, at *7 (C.D. Cal. Aug. 15, 2006). Plaintiffs have failed to do so, and their breach of implied covenant claim accordingly fails as a matter of law, and should be dismissed with prejudice.

## VI. CONCLUSION

For all of the foregoing reasons, and those set forth in the opening brief, Defendants respectfully request that the Court dismiss with prejudice each and every claim in the CAC.

Dated: April 11, 2011                    DLA PIPER LLP (US)

/s/ Christopher M. Young
CHRISTOPHER M. YOUNG
NOAH A. KATSELL
KAREN S. CHEN
Attorneys for Defendants Bridgepoint Education, Inc., Ashford University, and University of the Rockies

# CERTIFICATE OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is DLA Piper US LLP, 401 B Street, Suite 1700, San Diego, California 92101. On April 11, 2011, I served the within document(s):

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS BRIDGEPOINT EDUCATION, INC., ASHFORD UNIVERSITY, AND UNIVERSITY OF THE ROCKIES TO DISMISS CLASS ACTION COMPLAINT**

- ☐ by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

- ☐ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, for delivery via overnight/express service carrier at San Diego, California addressed as set forth below.

- ☐ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Diego, California addressed as set forth below.

- ☐ by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below on this date before the close of normal business hours.

- ☐ by transmitting via electronic mail a copy of the document(s) listed above in .pdf format, with no transmission errors reported, to the person(s) at the e-mail address(es) denoted on the Electronic Mail notice list.

- ☒ I hereby certify that on the below date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail notice list, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice list.

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing affidavit.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on April 11, 2011, at San Diego, California.

Sarah Walter