# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT ROSENDAHL and VERONICA CLARK, on behalf of themselves and all others similarly situated<br><br>Plaintiffs,<br>vs.<br>BRIDGEPOINT EDUCATION, INC., ASHFORD UNIVERSITY, and UNIVERSITY OF THE ROCKIES,<br><br>Defendants. | CASE NO. 11cv61 WQH (WVG)<br><br>ORDER |

HAYES, Judge:

The matters before the Court are the Motion to Dismiss (ECF No. 10) and Motion to Strike (ECF No. 11) filed by Defendants Bridgepoint Education, Inc., Ashford University, and University of the Rockies.

## I.  Background

On January 11, 2011, Plaintiffs initiated this action by filing the Complaint. (ECF No. 1). On March 15, 2011, Defendants Bridgepoint Education, Inc., Ashford University, and University of the Rockies filed a Motion to Dismiss and a Motion to Strike the Complaint. On April 4, 2011, Plaintiffs Scott Rosendahl and Veronica Clark filed Oppositions to the Motions and a Request for Judicial Notice. On April 11, 2011, Defendants Bridgepoint Education, Inc., Ashford University, and University of the Rockies filed replies as well as an Opposition to Plaintiffs' Request for Judicial Notice.

## II. Allegations of the Complaint

Plaintiffs propose a nationwide class action "consisting of all persons who enrolled in and/or attended classes at one of the two academic institutions operated by Bridgepoint Education, Inc. ('Bridgepoint' or the 'Company') – Ashford University ('Ashford') or University of the Rockies ('The Rockies') – during the period approximately from March 1, 2005 through the present (the 'Class Period')." (ECF No. 1 at ¶ 1).

Plaintiffs allege that Bridgepoint, the company that owns and operates Ashford and The Rockies, employs deceptive marketing tactics including misleading students regarding the true cost of attendance, misleading students about the quality of academic instruction, misleading students about post-graduate employability, misleading students about the need for federal student loans, and misleading students about their obligation to repay federal student loans. The deceptive marketing practices "are designed solely to sign up as many students as possible and to sign them up for as many federal loans as possible ...." *Id*. at ¶ 49.

Plaintiffs allege that Bridgepoint improperly hides information from prospective students on its website through a "sophisticated" tactic of directing internet search engine results to a "polished-looking yet basic site that offers vague and misleading praise for the universities and an option to enroll online." *Id*. at ¶ 51. Plaintiff alleges that "while a more comprehensive website for both schools exists, they cannot be easily accessed by prospective students ...." *Id.*

Plaintiffs allege that Bridgepoint misrepresents the quality and reputation of its academic programs, its job placement rate, and its student's post-graduate employability; however, "the degrees from Ashford and The Rockies are not as marketable as similar degrees from traditional postsecondary schools," "degrees from Ashford and The Rockies would be of de minimus use to helping graduates seek employment," and "salaries quoted to students as representative of their 'earning potential' ... were earned by less than 5% of all individuals in those professions." *Id*. at ¶ 72. Plaintiffs allege that Bridgepoint employs deceptive tactics regarding federal tuition assistance by "pressur[ing] prospective students to enroll ... before completing their financial aid applications[ and o]nce enrolled, Bridgepoint completes and

submits the financial aid applications on the students' behalf, requesting the maximum allowable amount even if the amount exceeds the cost of attendance...." *Id*. at ¶ 74. Bridgepoint misleads students about how much of their tuition will be paid by federal financial aid and "misleadingly downplays students' federal loan repayment obligations often telling prospective students not to worry about loan repayment ...." *Id*. at ¶¶ 75-76.

Plaintiffs allege that Bridgepoint targets veterans because "in order to maintain its Title IV standing, Bridgepoint must derive no less than 10% of its revenue from sources other than Title VI funds ... [and] the money Bridgepoint ... receives from veterans via Post-9/11 GI Bill does not count towards the 90% limit these schools can receive in federal funding." *Id*. at ¶ 79. "The result of [Bridgepoint's] deception is that veterans ... often apply for loans, and often end up with far more debt than was necessary or than they can pay back." *Id*. at ¶ 86.

Plaintiffs allege that Bridgepoint uses a prohibited incentive system which encourages enrollment advisors to employ deceptive and harassing marketing tactics. Plaintiffs allege that the Government Accountability Office has exposed widespread for-profit college misfeasance.

Plaintiff Scott Rosendahl, active duty member of the United States Air Force, alleges that he spoke with an online enrollment advisor at Ashford, enrolled in online courses, completed five online courses by 2009, and currently owes Ashford over $4,000. Plaintiff Rosendahl "was induced to enroll ... in large part because his enrollment advisor misleadingly claimed that Ashford offered 'one of the cheapest undergraduate degree programs in the country." *Id*. at ¶ 58. However, Bridgepoint "charges more tuition per credit hour than all of the public colleges and universities in over half of the states in the entire nation." *Id.* at ¶ 54.

Plaintiff Veronica Clark alleges that she was advised by an enrolment advisor that the doctor of psychology program at The Rockies "would qualify her for licensure as a clinical psychologist in the U.S. military." *Id*. at ¶ 23. Plaintiff Clark enrolled in the program and completed nearly one year "before discovering that this was not the case." *Id*. Plaintiff Clark was "induced to enroll at The Rockies in part because her enrollment advisor claimed that The Rockies offered one of the highest quality PsyD programs available[;]" however, she submitted her transcript to the U.S. Navy and civilian psychologist who told her that "her degree was

worthless" and "she would have to begin her degree again at an APA accredited institution." *Id.* at ¶¶ 68, 71. Plaintiff Clark was told her degree would cost $53,000 but after she enrolled she was told the cost would be $75,000. Plaintiff Clark owes The Rockies over $23,000.

Plaintiffs assert claims for (1) breach of implied contract; (2) breach of the implied covenant of good faith and fair dealing; (3) violation of California Business and Professions Code section 17200 ("Unfair Competition Law"); (4) violation of California Business and Professions Code section 17500 ("False Advertising Act"); (5) violation of the Consumer Legal Remedies Act ("CLRA"); (6) negligent misrepresentation; and (7) fraud.

### III. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Federal Rule of Civil Procedure 8(a) provides: "A pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

To sufficiently state a claim for relief and survive a Rule 12(b)(6) motion, a complaint "does not need detailed factual allegations" but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). When considering a motion to dismiss, a court must accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1950 (2009). However, a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the

plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted).

## IV. Discussion

### A. California's Unfair Competition Law - Claim Three
### False Advertising Act - Claim Four
### Consumer Legal Remedies Act - Claim Five

Defendants contend that Plaintiffs lack constitutional standing and lack standing pursuant to California Proposition 64 to assert claims for violation of California's Unfair Competition Law, the False Advertising Act, and the Consumer Legal Remedies Act on the grounds that Plaintiffs cannot establish injury-in-fact. Defendants contend that "[n]either [Plaintiff] claims not to have received the education he or she paid for, that he or she could not transfer their course units to a different university... or that their education was without value." (ECF No. 10-1 at 7). Defendants also contend that the Complaint does not allege that Plaintiffs were "actually exposed to the majority of [the] alleged misrepresentations" or that relied on any fraudulent information in choosing to enroll at Ashford or The Rockies. *Id.* Defendants also allege that the claims "sound in fraud" and are not alleged with the requisite level of particularity. *Id.* at 15.

Plaintiffs contend that they have standing to assert their claims and have sufficiently alleged injury-in-fact on the grounds that Plaintiffs took out thousands of dollars worth of loans as a result of Defendants' misleading statements. Plaintiffs contend that their claims for violation of California's Unfair Competition Law and the Consumer Legal Remedies Act are not subject to a heightened pleading standard, but even if they were, the claims have been pled with particularity.

The Unfair Competition Law ("UCL") permits civil recovery for "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising ...." Cal. Bus. & Prof. Code section 17200. The False Advertising Act ("FAA") prohibits a "corporation or association ... [from] induc[ing] the public to enter into any obligation relating thereto, [or] to make or disseminate ... any advertising device... any statement, concerning ... those services ... which is untrue or misleading ...." Cal. Bus. & Prof. Code section 17500.

1   The Consumer Legal Remedies Act ("CLRA") proscribes deceptive practices in the sale of
2   goods and services.  Cal. Civil Code section 1750 et seq.
3         Article III of the United States Constitution restricts federal judicial power to the
4   adjudication of "Cases" or "Controversies."  U.S. Const. art. III, § 2.  Proposition 64 limits
5   standing to sue under the UCL and FAA to those who have suffered an injury-in-fact as a
6   result of the conduct which violated the UCL and FAA.  *See Californians For Disability Rights*
7   *v. Mervyn's, LLC,* 39 Cal. 4th 223, 227 (Cal. 2006) ("After Proposition 64, ... a private person
8   has standing to sue only if he or she has suffered [an] injury in fact and has lost money or
9   property as a result of such unfair competition.") (quotation omitted); *see also* Cal. Bus. &
10  Prof. Code section 17204 (stating that an individual may sue "who has suffered injury in fact
11  and has lost money or property as a result of the unfair competition."); Cal. Bus. & Prof. Code
12  section 17535 (stating that an individual may sue who has suffered injury in fact and has lost
13  money or property as a result of a violation of [the FAA].).  The CLRA limits standing to sue
14  to those who have suffered an injury-in-fact.  *See* Cal. Civil Code section 1780 (stating that
15  "[a]ny consumer who suffers any damage as a result of ... a method, act, or practice declared
16  to be unlawful by [by the CLRA] may bring an action against that person."); *see also Meyer*
17  *v. Sprint Spectrum L.P.,* 45 Cal. 4th 634, 641-46 (Cal. 2009).  A plaintiff must also show that
18  the injury-in-fact was the result of the defendant's violation of the UCL, FAA, or CLRA.  *See*
19  *In re Tobacco II Cases*, 46 Cal. 4th 298, 326-27 (Cal. 2009); *see also Laster v. T-Mobile USA,*
20  *Inc.*, 407 F. Supp. 2d 1181, (S.D. Cal. 2005) ("after Proposition 64, a person seeking to
21  represent claims on behalf of others must show that (1) she has suffered actual injury in fact,
22  and (2) such injury occurred as a result of the defendant's alleged unfair competition or false
23  advertising.").
24        In this case, Plaintiff Rosendahl has alleged that he "was induced to enroll in Ashford's
25  undergraduate program in large part because his enrollment advisor misleadingly claimed that
26  Ashford offered 'one of the cheapest undergraduate degree programs in the country.'" (ECF
27  No. 1 at ¶ 58).  Plaintiff Rosendahl has alleged that he took out federal student loans to attend
28  Ashford as a result.  *Id*. at ¶ 22.  The Court finds that Plaintiff Rosendahl has alleged sufficient

facts to show an injury-in-fact caused by Defendants' conduct.  Plaintiff Clark has alleged that "her enrollment advisor told her on numerous occasions that the total cost of her Doctor of Psychology ('PsyD') degree program would be $53,000."  *Id.* at ¶ 60.  Plaintiff Clark has alleged that "Only after she had enrolled for nearly a year did she learn that she would have to pay a minimum of $75,000 to complete her program. *Id.*  Plaintiff Clark has also alleged that she was advised by an enrolment advisor that the Doctor of Psychology program at The Rockies "would qualify [Plaintiff] for licensure as a clinical psychologist in the U.S. military." *Id.* at ¶ 23.  However, "this was not the case."  *Id*.  The Court finds that Plaintiff Clark has alleged sufficient facts to show an injury-in-fact caused by Defendants' conduct.  The Court also finds that these claims allege fraudulent conduct with the requisite level of particularity.  However, Plaintiffs have generally alleged several other misrepresentations regularly made by Defendants, but fail to allege facts to show that they suffered an injury-in-fact caused by Defendants as the result of these other misrepresentations.  The Court finds that Plaintiffs' conclusory allegations regarding other misrepresentations do not "provide the 'grounds' of [their] 'entitle[ment] to relief.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555 (quotation omitted); *see also Ashcroft v. Iqbal*, 129 S. Ct. at 1950.  The Court finds that pursuant to Proposition 64, Plaintiffs do not have standing to assert claims based on these other misrepresentations.

Accordingly, Defendants' Motion to Dismiss Plaintiffs' third claim for violation of the Unfair Competition Law, fourth claim for violation of the False Advertising Act, and fifth claim for violation of the Consumer Legal Remedies Act is denied as to: (1) Plaintiff Rosendahl's allegations at page 16 lines 4-6 that the "enrollment advisor misleadingly claimed that Ashford offered 'one of the cheapest undergraduate degree programs in the country[;]'" and (2) Plaintiff Clark's allegations at page 8 line 5-7 that the enrollment advisor told her that the Doctor of Psychology program "would qualify [Clark] for licensure as a clinical psychologist in the U.S. military" and at page 16 lines 21-23 that "her enrollment advisor told her ... that the total cost of her Doctor of Psychology ('PsyD') degree program would be $53,000." (ECF No. 1 at ¶¶ 23, 58, 60).  Defendants' Motion to Dismiss Plaintiffs' third claim

for violation of the Unfair Competition Law, fourth claim for violation of the False Advertising Act, and fifth claim for violation of the Consumer Legal Remedies Act is granted in all other respects.

**B. Negligent Misrepresentation - Claim Six**
   **Fraud - Claim Seven**

Defendants contend that Plaintiffs' claims of negligent misrepresentation and fraud are not alleged with the requisite level of particularity for fraud claims. Defendants contend that Plaintiffs also fail to allege that they acted in reliance on the misrepresentations or that they were injured as a result. Plaintiffs allege that they have sufficiently plead their claims.

The elements of a claim for fraud are: "(1) a misrepresentation, which includes a concealment or nondisclosure; (2) knowledge of the falsity of the misrepresentation, i.e., scienter; (3) intent to induce reliance on the misrepresentation; (4) justifiable reliance; and (5) resulting damages." *Cadlo v. Owens-Illinois, Inc.*, 125 Cal. App. 4th 513, 519 (2004) (citing *Small v. Fritz Cos., Inc.*, 30 Cal. 4th 167, 173 (2003)). "The same elements comprise a cause of action for negligent misrepresentation, except there is no requirement of intent to induce reliance. "In both causes of action, the plaintiff must plead that he or she actually relied on the misrepresentation." *Id*. (citing *Mirkin v. Wasserman,* 5 Cal. 4th 1082, 1088-89 (Cal. 1993)).

"It is well-established in the Ninth Circuit that both claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirement." *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003); *see also Lorenz v. Sauer*, 807 F.2d 1509, 1511-12 (9th Cir. 1987) ("Under California law, negligent misrepresentation is a species of actual fraud...."). Pursuant to Rule 9(b), "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) "requires more specificity [than Rule 8,] including an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quotation omitted).

In the fraud claim, Plaintiffs re-allege all of their previous allegations. Plaintiffs also allege that:

> Defendants induced Plaintiffs ... to enroll and/or attend classes at Ashford or The Rockies by making one or more, or in many cases all, of the following false and fraudulent misrepresentations of fact to Plaintiffs ....The Rockies prepares and qualifies its students for a professional psychology license: 'The University's goal is to provide a professional graduate education in psychology to individuals who seek licensure as psychologists.' Charlita Shelton, President of The Rockies, [website address] .... Ashford and the Rockies offer 'among the lowest tuition rates' in the country: 'You'll find that Ashford offers one of the lowest tuition costs available.' Ashford University [website address].

(ECF No. 1 at ¶ 137(a), (b)). Plaintiffs allege that:

> Defendants breached [their] fiduciary duties ... by omitting to disclose material facts alleged above to Plaintiffs ... including:
> (a) That Ashford and The Rockies charge some of the highest tuition rates in the country;
> (b) That federal student loans are not dischargable through bankruptcy;
> (c) That degrees from Ashford and The Rockies are not nearly as marketable as similar degrees from traditional postsecondary schools;
> (d) That degrees from Ashford and The Rockies are only of de minimis use in helping graduates seek employment in their chosen profession; and
> (e) That the salaries quoted by Defendants as representative of the 'earnings potential' in a given profession were earned by less than 5% of individuals in those chosen professions.

*Id*. at ¶ 140 (a)-(e). Plaintiffs allege that "Plaintiffs ... were ignorant of the true facts and relied upon Defendant's misrepresentations in deciding to enroll at Ashford and/or The Rockies." *Id.* at ¶ 141.

In the negligent misrepresentation claim, Plaintiffs re-allege all of their previous allegations. Plaintiffs also allege:

> Defendants made uniform and identical material written representations regarding the cost of attending Ashford and the Rockies, the value of the degree programs offered at these schools, the quality of the schools as compared to other institutions, and students' post-graduation qualification for certain professional licenses. Defendants omitted to disclose material facts alleged herein....

*Id*. at ¶ 132. Plaintiffs allege: "Plaintiffs ... relied on these negligent representations before enrolling at one of these schools and relied on these misrepresentations in deciding to enroll." *Id*. The negligent misrepresentation claim alleges: "Plaintiffs ... were ignorant of the true facts. Had they known the true facts, Plaintiffs ... would not have enrolled in Ashford or The Rockies." *Id*. at ¶ 133.

As discussed above, Plaintiff Rosendahl has alleged that he "was induced to enroll in

Ashford's undergraduate program in large part because his enrollment advisor misleadingly claimed that Ashford offered 'one of the cheapest undergraduate degree programs in the country.'" (ECF No. 1 at ¶ 58). Plaintiff Clark has alleged that "her enrollment advisor told her on numerous occasions that the total cost of her Doctor of Psychology ('PsyD') degree program would be $53,000." *Id*. at ¶ 60. Plaintiff Clark has alleged that "Only after she had enrolled for nearly a year did she learn that she would have to pay a minimum of $75,000 to complete her program. *Id.* Plaintiff Clark has also alleged that she was advised by an enrolment advisor that the Doctor of Psychology program at The Rockies "would qualify [Plaintiff] for licensure as a clinical psychologist in the U.S. military." *Id*. at ¶ 23. Plaintiff Clark alleges: "this was not the case." *Id*. The Court finds that these allegations adequately state a claim of fraud and negligent misrepresentation and are alleged with the requisite level of particularity. However, Plaintiffs have generally alleged several other misrepresentations regularly made by Defendants, but fail to allege facts to show that they relied on of these other misrepresentations. The Court finds that Plaintiffs' conclusory allegation that they "relied" on Defendants' misrepresentations, does not "provide the 'grounds' of [their] 'entitle[ment] to relief.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555; *see also Ashcroft v. Iqbal*, 129 S. Ct. at 1950.

Accordingly, Defendants' Motion to Dismiss Plaintiffs' sixth claim for negligent misrepresentation and seventh claim for fraud is denied as to: (1) Plaintiff Rosendahl's allegations at page 16 lines 4-6 that the "enrollment advisor misleadingly claimed that Ashford offered 'one of the cheapest undergraduate degree programs in the country[;]'" and (2) Plaintiff Clark's allegations at page 8 line 5-7 that the enrollment advisor told her that the Doctor of Psychology program "would qualify [Clark] for licensure as a clinical psychologist in the U.S. military" and at page 16 lines 21-23 that "her enrollment advisor told her ... that the total cost of her Doctor of Psychology ('PsyD') degree program would be $53,000." (ECF No. 1 at ¶¶ 23, 58, 60). Defendants' Motion to Dismiss Plaintiffs' sixth claim for negligent misrepresentation and seventh claim for fraud is granted in all other respects.

//

### C. Breach of Implied Contract - Claim One
### Breach of the Implied Covenant of Good Faith & Fair Dealing - Claim Two

Defendants contend that Plaintiffs' claim for breach of implied contract fails to allege that Defendants intended to create a contract. Defendants contend that Plaintiffs have failed to allege the existence of any contract upon which the implied covenant of good faith and fair dealings can be based.

Plaintiffs contend that they adequately alleged breach of implied contract on the grounds that "Bridgepoint made repeated and uniform outward manifestations that would lead a reasonable person to believe that it intended to promise to deliver certain things to its students." (ECF No. 15 at 17). Plaintiffs also assert "while Plaintiffs were not in possession of their express written enrollment agreements with Bridgepoint at the time they filed their Complaint, they now possess these express contracts and can easily reference them in an amended complaint ...." *Id.* at 18.

California Civil Code section 1621 provides: "An implied contract is one, the existence and terms of which are manifested by conduct." Cal. Civ. Code section 1621. An implied contract "consists of obligations arising from a mutual agreement and intent to promise where the agreement and promise have not been expressed in words." *Silva v. Providence Hospital of Oakland,* 14 Cal. 2d 762, 773 (Cal. 1939) (citations omitted); *see also Stanley v. University of Southern Cal.*, 178 F.3d 1069, 1078 (9th Cir. 1999) (citing *Silva,* 14 Cal. 2d at 773). "It is settled that both [express and implied contracts] are identical in that they require a meeting of the minds or an agreement." *Mulder v. Mendo Wood Products, Inc*., 225 Cal. App. 2d 619, 632 (1964).

In this case, Plaintiffs alleges that they "entered into implied contracts based upon numerous *promises* of performance made by Defendants." (ECF No. 1 at 30) (emphasis added). Plaintiffs allege that "Defendants *misrepresented* to Plaintiffs ... that they would deliver the following benefits: (a) Provide a high-quality education at one of the lowest tuition rates available; (b) Prepare students for successful job placement in their profession of choice; (c) Provide students the opportunity to earn top salaries in their chosen profession; and (d) Prepare and qualify students to obtain professional licensure." *Id.* (emphasis added). Plaintiffs

allege that "[i]n reliance on these *misrepresentations*, and as consideration for performance of these *promises* by Defendants, Plaintiffs ... promised to enroll ... and pay tuition...." *Id*. (emphasis added).

Although Plaintiffs have alleged that Defendants made several misrepresentations and promises regarding the quality and value of an education offered by Bridgepoint, Plaintiffs have failed to allege facts sufficient to show a meeting of the minds or mutual intent to contract. The Court finds that Plaintiffs have failed alleged sufficient facts to state a claim for breach of implied contract.

"Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *Marsu, B.V. v. Walt Disney Co.*, 185 F.3d 932, 937 (9th Cir. 1999) (applying California law). That duty, known as the covenant of good faith and fair dealing, requires "that neither party ... do anything which will injure the right of the other to receive the benefits of the agreement." *Andrews v. Mobile Aire Estates*, 125 Cal. App. 4th 578, 589 (2005). "The implied covenant of good faith and fair dealing is limited to assuring compliance with the express terms of the contract and cannot be extended to create obligations not contemplated by the contract." *Pasadena Live, LLC v. City of Pasadena*, 114 Cal. App. 4th 1089, 1094 (2004) (quotation omitted); *see also Racine & Laramie, Ltd. v. Dep't of Parks & Recreation*, 11 Cal. App. 4th 1026, 1032 (1992).

As discussed above, Plaintiffs have failed to allege sufficient facts to show the existence of an implied contract. Accordingly, the Court finds that Plaintiffs have failed to allege that Defendants injured their right to receive the benefits of the agreement. The Court concludes that the Complaint fails to allege sufficient facts to support a claim for breach of the implied covenant of good faith and fair dealing. Accordingly, Defendants' Motion to Dismiss Plaintiffs' first claim for breach of implied contract and second claim for breach of implied covenant of good faith and fair dealing is granted.

## V.     Motion to Strike

Defendants request that the Court strike paragraphs 17-19, 27-33, 72(d), 73-95, and 130 from the Complaint on the grounds that they are immaterial and impertinent. Defendant

contends that allegations regarding the seven executive officers of Bridgepoint in the Complaint should be stricken on the grounds that Plaintiff has not named the individuals as defendants. Defendants contend that allegations regarding a United States Government Accountability Office report on for-profit, higher education institutions and statements made by Senator Tom Harkin should be stricken on the grounds that they do "not even relate to Bridgepoint." (ECF No. 11-1 at 3). Defendants contend that Plaintiffs allegations regarding a Bloomberg News article violates of Rule 11 of the Federal Rules of Civil Procedure on the grounds that they are borrowed allegations. Defendants contend that allegations regarding certain misrepresentations should be stricken on the grounds that Plaintiff lacks standing to assert claims based on those misrepresentations. Defendants contend that Plaintiffs allegation in the Consumer Legal Remedies Act claim that they suffered damages should be stricken on the grounds that Plaintiff only seeks injunctive relief for that claim.

Plaintiffs contend that Defendant's Motion to Strike is "a line-item veto with respect to highly relevant allegations [Defendants] simply do not like" (ECF No. 14 at 3). Plaintiffs contend that Defendants' Motion to Strike is procedurally defective on the grounds that it attempts to exclude claims as a matter of law.

Rule 12(f) of the Federal Rules of Civil Procedure states that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. civ. P. 12(f). "Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being plead." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (overruled on other grounds by *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994)); *see also Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (declining to strike a claim for damages "because whether these damages are recoverable relates directly to the plaintiff's underlying claim for relief."). "Impertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Fantasy, Inc.*, 984 F.2d at 1527; *see also Whittlestone, Inc.*, 618 F.3d at 973 (declining to strike a claim for damages "because whether these damages are recoverable pertains directly to the harm being alleged.").

A motion to strike under "Rule 12(f) 'is neither an authorized nor a proper way to procure the dismissal of all or a part of a complaint.'" *Yamamoto v. Omiya*, 564 F.2d 1319, 1327 (9th Cir. 1977) (Hufstedler, J., concurring and dissenting) (quoting 5 Wright & Miller, Federal Prac. & Proc. § 1380, at 782). Motions to strike are generally regarded with disfavor and "should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *Neveau v. City of Fresno*, 392 F. Supp. 2d 1159, 1170 (E.D. Cal. 2005) (citation omitted). "[C]ourts are reluctant to determine disputed or substantial questions of law on a motion to strike." *S.E.C. v. Sands*, 902 F. Supp. 1149, 1166 (C.D. Cal. 1995); *see also Whittlestone, Inc.*, 618 F.3d at 976 (holding that Rule 12(f) "does not authorize a district court to dismiss a claim for damages on the basis it is precluded as a matter of law."). In exercising its discretion, the court views the pleadings in the light most favorable to the non-moving party, and "resolves any doubt as to the relevance of the challenged allegations or sufficiency of a defense in the defendant's favor." *Cal. Dept. of Toxic Substances Control*, 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002).

The paragraphs that Defendants seek to strike contain general factual allegations related to the claims in the Complaint and an allegation that Plaintiffs were damaged. The Court finds that the Motion to Strike seeks dismissal of part of the Complaint although a motion under "Rule 12(f) 'is neither an authorized nor a proper way to procure the dismissal of all or a part of a complaint.'" *See Yamamoto*, 564 F.2d at 1327. It is not clear that the allegations could have no possible bearing on the subject matter of this litigation. *Neveau*, 392 F. Supp. 2d at 1170; *see also Whittlestone, Inc.*, 618 F.3d at 976. Accordingly, the Motion to Strike (ECF No. 11) filed by Defendants Bridgepoint Education, Inc., Ashford University, and University of the Rockies is DENIED.

**VI.   Conclusion**

IT IS HEREBY ORDERED that the Motion to Dismiss (ECF No. 10) filed by Defendants Bridgepoint Education, Inc., Ashford University, and University of the Rockies is GRANTED in part and DENIED in part. The Motion to Dismiss Plaintiff's claims for breach of implied contract and claim for breach of implied covenant of good faith and fair

1  dealing is GRANTED.  The Motion to Dismiss Plaintiff's claims for violation of the Unfair

2  Competition Law, for violation of the False Advertising Act, for violation of the Consumer

3  Legal Remedies Act, for negligent misrepresentation, and for fraud is DENIED as to: (1)

4  Plaintiff Rosendahl's allegations at page 16 lines 4-6 that the "enrollment advisor misleadingly

5  claimed that Ashford offered 'one of the cheapest undergraduate degree programs in the

6  country[;]'" and (2) Plaintiff Clark's allegations at page 8 line 5-7 that the enrollment advisor

7  told her that the Doctor of Psychology program "would qualify [Clark] for licensure as a

8  clinical psychologist in the U.S. military" and at page 16 lines 21-23 that "her enrollment

9  advisor told her ... that the total cost of her Doctor of Psychology ('PsyD') degree program

10 would be $53,000."  (ECF No. 1 at ¶¶ 23, 58, 60).  The Motion to Dismiss is GRANTED in

11 all other respects.  The Motion to Strike (ECF No. 11) filed by Defendants Bridgepoint

12 Education, Inc., Ashford University, and University of the Rockies is DENIED.

13 DATED:  October 17, 2011

*/s/ William Q. Hayes*
**WILLIAM Q. HAYES**
United States District Judge